## EX PARTE JIM PETTIS.

No. 933.   Decided November 10, 1910.

**Habeas Corpus—Bail—Cause of Death.**

Where it was not shown by the facts that the death of the deceased resulted completely from the acts of the defendant, and the court in the trial of the case would be compelled to charge on assault with intent to murder, the relator is entitled to bail. Following Noble v. State, 54 Texas Crim. Rep., 436, and other cases.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. James I. Perkins.

Appeal from a habeas corpus trial refusing bail in a case of murder.

The opinion states the case.

*George S. King,* for relator.—Cited Johnson v. State, 65 S. W. Rep., 92, and cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a habeas corpus trial had in the District Court of Nacogdoches County wherein the defendant was denied bail. An indictment had been returned into the District Court of Nacogdoches County at the February term, 1910, charging the relator, Jim Pettis, with the murder of one Belle Hutchinson by then and there cutting and stabbing her with a knife. On the trial of the habeas corpus Dr. Nelson testified that he was a practicing physician; that he was called professionally to see Belle Hutchinson, the deceased, shortly after she was cut with a knife by Jim Pettis; that he was there in about a half hour after she received the wounds; that she lived about five days afterwards; that he saw her professionally from two to four times a day as long as she lived, that is, he would be passing and would stop to see her; that he saw her about one hour before she died; that he dressed the wounds found on her body; that when he last saw her just before her death the wounds were healing nicely. He gave it as his opinion that the wounds of themselves were not necessarily fatal. He attributed her death more to her imprudence than anything else; he stated that she did not go to bed; would not stay in bed; that he never saw her in bed at any time that he was there; that she would be sitting up or walking around. He says that he attributed the immediate cause of her death to a dislodgment of a clot on the brain which gave her an apoplectic stroke; that if she had remained quiet and had not exercised or gotten up it is not likely that the blood clot would have swept into the brain. He gave it as his opinion as a physician from his examination and treatment of her that had she remained quiet as he directed her she would have recovered from the wounds. He described the wounds as being one wound on the left side of the throat directly under the point of the jaw, reaching over what is called "the Adam's apple," and that it had cut the wind pipe nearly in two; that there was another incision that commenced under the point of the right jaw under "the Adam's apple," cutting into "the Adam's apple" slightly; that these were the two principal wounds, and that there was a stab wound on the left side of the neck considerably below the ear. The witness says these were the only cuts that he discovered; that her hand was cut in several places through the finger. These other wounds did not amount to anything. There was no cut in the back and the wounds in the hand were evidently made by some sharp instrument in her effort to ward off or to grab

the instrument. The witness Hodge said that he saw the deceased a short time before her death and that she was up and apparently in good physical condition; that she transacted some business with witness. Under this state of facts it is not shown that the death of the deceased resulted completely from the act of the defendant and under this doctor's testimony, if true, the court in the trial of the case would be compelled to charge on assault with intent to murder. See Noble v. State, 54 Texas Crim. Rep., 436; Morgan v. State, 16 Texas Crim. App., 593. The evidence failing to show conclusively that the defendant died from the effects of the wounds, or the testimony leaving it problematical as to whether the wounds caused the death or not, we are of opinion that the record presents a case that would entitle relator to bail. The judgment of the lower court will therefore be reversed and bail granted in the sum of $4,000, and the sheriff upon the execution of a sufficient bond under the terms and conditions of law will release relator from custody.

The case is reversed and bail granted.

*Bail granted.*