# JUNE, 1947

### ARTHUR ADAMS v. THE STATE.

No. 23646. Delivered April 30, 1947.
Rehearing Denied June 25, 1947.

*Marvin Roberson* and *P. O. Lopp,* both of Fort Worth, for appellant.

*Alfred M. Clyde,* Criminal District Attorney, and *W. E. Myres,* Assistant Criminal District Attorney, both of Fort Worth, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment is assessed at death.

The record reflects that on the night of June 15th, 1946, between the hours of 10:00 and 10:30, appellant shot his wife from the effects of which she died four days later. It was the theory of the State supported by evidence that the deceased discovered appellant in a driveway to the rear of an adjoining house with another negro woman under conditions which indicated that they were having illicit relations. As she approached them, she remarked to appellant, "Adams, what do you want to treat me like this for? How come you to do me like you do?" Thereupon, appellant drew his pistol and shot her.

There is no material difference in the testimony adduced by the State and that of the defendant except that appellant claimed he shot her in self-defense. This issue was raised by his own testimony which was to the effect that the deceased was a large woman, high tempered, and at all times carried a large-bladed pocket knife; that when she spoke to him, he feared that she would attack him with that knife whereupon he shot her.

The court in his charge to the jury instructed them relative to the law of murder with and without malice and self-defense to which no objection was urged by him.

Appellant predicates his claim for reversal of the judgment of conviction upon the following grounds:

First, that the evidence is insufficient to show that the deceased died as a result of the shot wounds, but to the contrary, that the primary cause of her death was peritonitis. While it is true that the testimony shows that peritonitis was the immediate cause of her death superinduced by the wounds inflicted upon her, he would nevertheless be guilty of murder. Appellant evidently overlooked Article 1202, P. C., which provides as follows: "The destruction of life must be complete by such act, agency, procurement or omission; but although the injury which caused death might not under other circumstances have proved fatal, yet if such injury be the cause of death, without its appearing that there has been any gross neglect or manifestly improper treatment of the person injured, it is homicide." See Hill v. State, 108 Tex. Cr. R. 489, Franklin v. State, 41 Tex. Cr. R. 21, and cases there cited.

In the case of Hill v. State, supra, the deceased, as in this case, died from peritonitis superinduced by the wounds inflicted. The question as here presented is fully discussed in that case and we see no need to reiterate what is said in disposing of the question in that case. In the instant case there is not any evidence that the attending physicians were guilty of gross neglect or improper treatment. To the contrary, there is evidence that they gave her such drugs and such treatment as is prescribed by medical science in cases of this nature. Dr. Robert E. Headlee testified that so far as he knew, everything was done for her that was humanly possible. It must be borne in mind that before a court is required to give an instruction on an issue of gross neglect or manifestly improper treatment as those terms are used in Article 1202, P. C., there must be some evidence raising the issue. Speculative possibilities are not deemed sufficient to require such an instruction.

His next contention is that the court erred in refusing to submit to the jury his Special Charge No. 1 which is in substance as follows:

"The existence of malice aforethought is not presumed from the mere act of killing another with a deadly weapon by its in-

tentional and deliberate use against the person killed. There must be present at the very time of the killing a cool, calm, and sedate mind with malice aforethought, and a heart fatally bent on mischief at the very time he used such deadly weapon in taking the life of another; bearing in mind the foregoing facts, I charge you that in order to find the defendant guilty of murder as charged in the indictment, you must find beyond a reasonable doubt from the evidence that all of the above elements for murder were present at the very time the defendant shot Izora Adams, if either one of said elements were absent at the very time of the shooting or if you have a reasonable doubt thereof, you will find the defendant not guilty."

This was an improper charge because if the jury had found him guilty of murder without malice, they would have been required to acquit him under this instruction. Therefore, there was no error on the part of the trial court in declining to submit the same to the jury. Malice, in its legal sense, means the willful and intentional doing of a wrongful act without legal justification or excuse. It may exist without former grudges or antecedent menaces. It may be presumed as a matter of fact from the act committed or words spoken. See Tex. Jur. Vol. 12, Sec. 33, page 255, and Banks v. State, 85 Tex. Cr. R. 165.

Appellant's third contention is that there is a material variance between the allegations in the indictment and the proof; in this, that the indictment charged that he killed the deceased by shooting her with a gun while the evidence showed that he shot her with a pistol. The question here presented was decided adversely to his contention in the cases of Taylor v. State, 44 Tex. Cr. R. 547, and Douglass v. State, 26 Tex. App. 109. Therefore, we see no need to reiterate what has been said in those cases.

What we have said in disposing of his third complaint also disposes of his fourth complaint.

By his fifth complaint, he claims that the evidence is insufficient to show that he killed the deceased; in this, that the evidence showed the primary cause of her death was peritonitis. What we have said in disposing of his first contention will dispose of the question here presented since peritonitis was superinduced by the wounds inflicted upon her. Consequently, he is nevertheless guilty of murder.

His next contention is that the jury acted in great haste in returning their verdict finding him guilty and assessing his punishment at death which within and of itself shows that their minds were greatly inflamed against him. We cannot consider this complaint because there is no evidence showing how long the jury deliberated on their verdict, nor would we be justified in setting any definite time for the jury to consider the facts and determine the guilt or innocence of the accused. The jury heard the evidence as related by the witnesses and the discussions thereof by the attorney for the State and defendant; they also heard the charge read by the court and no doubt fully understood the same when they retired to consider their verdict.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

#### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's attorney seems to have been confused relative to the rules of this appellate court governing argument on a motion for a rehearing. In any case before this court, argument thereon is proper and granted upon original submission from both sides to each case, and 40 minutes' time is granted to the attorney for appellant in a felony case of this importance, after which the State's attorney would have a like amount of time. After the State's conclusion of argument, a 15 minutes' rejoinder is given for appellant's attorney. Upon a motion for a rehearing the losing party, under the original opinion, has one-half of the time allotted to him on the original submission to argue his motion and the party who prevailed on the original hearing is not allowed to argue such motion. Appellant's attorney is mistaken when he states in his motion that we refused to allow him to urge this motion. It is our general rule that we invite oral argument and especially in death penalty cases.

Appellant's attorney further claims that we were in error in our original opinion in the latter portion of the first paragraph thereof where it is said:

"It was the theory of the State supported by evidence that the deceased discovered appellant in a driveway to the rear of

an adjoining house with another negro woman under conditions which indicated that they were having illicit relations. As she approached them, she remarked to appellant, 'Adams, what do you want to treat me like this for? How come you to do me like you do?' "

The only words in this statement that might be in contravention of the record are "that they were having illicit relations." The testimony does show by the woman, Vera Nelms (or Boyd), that appellant was at that time asking her for a date, at which time appellant had called her from her home near the driveway and asked her, "When can I see you?" He had hold of her hand and she took it to mean that he wanted to go )ut with her. About that time the deceased came on the scene. She saw nothing in deceased's hand, and appellant still had hold of the witness' hand. When the deceased came up the witness then left, and soon thereafter she heard the shot.

There is a dying declaration from the deceased in the record in which it is claimed she said:

"I have been long wanting to catch up with Adams, and I caught him with these things (eyes). * * * I walked up on him tonight and saw him with these things (eyes). Then she said he shot her."

We think the statement, "illicit relations" may have been a little premature just at this juncture, but one who was in an alley or driveway holding a married woman's hand and had just propositioned her for a date was evidently at least requesting to be permitted to establish illicit relations with such woman.

We think the original opinion herein properly disposes of all further matters again urged in the motion for a rehearing.

The motion will therefore be overruled.