**Jesse Earl PARKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 35547.

Court of Criminal Appeals of Texas.

May 29, 1963.

Rehearing Denied Oct. 23, 1963.

Second Rehearing Denied Dec. 4, 1963.

Ross Hardin, Dallas, Sam W. Pettigrew, Grand Prairie, for appellant.

Henry Wade, Dist. Atty., Jame K. Allen, William F. Alexander, Ben F. Ellis, Patrick McDowell and Emmett Colvin, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is rape; the punishment, death.

After having supper at a nearby drive-in, Mary, the prosecutrix, and her husband Frank, with their 9 months old baby, went to the home of Frank's brother Charlie, which was some 8 blocks from where the prosecutrix and Frank lived. There were other guests with whom the two brothers and their wives played cards. Some of those present were drinking during the evening.

At about 9 o'clock P.M. the prosecutrix drove to her home to get some diapers for her baby. As she pulled up to the curb on her return to Charlie's house, some 15 minutes later, she saw a Negro man passing by.

Some 15 minutes after she rejoined her husband and others of the party at Charlie's home the prosecutrix became ill and vomited. Her husband suggested that they return home but, upon the encouragement of others, it was decided that Frank should

stay on for a while and his brother would take him home later.

The prosecutrix, having assured her husband that she was well enough to drive, left Charlie's home about 10:30 P.M. taking the baby with her.

When she had driven about half a block a man who was in the back seat put his hand over her mouth and placed what felt like a gun to the back of her neck.

She drove and parked as the man directed. In backing the car, she turned and saw that the man was a Negro with a scarf over his mouth and nose and that he had a gun pointed at her.

After she had parked the car and cut off the lights and the motor, as she was directed to do, the prosecutrix was pulled into the back of the car and pushed down in the back seat. The baby on the front seat began to cry. The man threatened to kill the baby if she did not quiet him, and she gave the baby his bottle.

The prosecutrix was again jerked into the back seat and at this time she slapped the man, thereby causing the scarf to fall from his face, giving her a clear view of him. He threatened to kill her if she slapped him again, and with the gun in his hand proceeded to have sexual relations with her without her consent while she was in fear for her life and the life of her baby.

After committing the act the man ordered the prosecutrix to get in the front seat and start the car, which she did. He was still pointing the gun at her and said: "I ought to kill you." She complied with his demand that she give him her name and telephone number and he said: "If you tell on me I will find where you live and I will kill you."

A noise in a nearby bush attracted the man's attention and when he turned around to look the prosecutrix quickly drove away and reported to her husband what had happened and where it had happened, and police were notified.

The prosecutrix identified the appellant in a police lineup some three hours later and was positive of her identification of him at the trial as the Negro man who had committed the rape.

Her testimony in this regard was corroborated by other evidence introduced by the state.

A billfold belonging to the appellant was found in the automobile the prosecutrix was driving. In it were his driver's license; his social security number and other papers, including a receipt from a Dallas lawyer for a $15.00 payment on a $75.00 account or fee in a divorce case.

At some time after she and her husband arrived at Charlie's home the light bulb or globe had been removed from the dome light in the automobile which the prosecutrix was driving. The prosecutrix knew it was there at that time because she had dropped one of the baby's diapers and was able to see and retrieve it by the dome light. A globe or bulb such as the one removed from the car was found in appellant's coat pocket. It was inserted in the socket by an officer and found to fit.

The appellant was asleep in the kitchen of the apartment occupied by his brother and sister-in-law when he was arrested. He was in the nude. His coat and trousers which he put on were in the kitchen and a small pistol was on the table next to the bed.

The pistol, coat and trousers were introduced in evidence, as were the light globe or bulb and a scarf that were found in the pockets of the coat.

The prosecutrix testified that the pistol looked like the gun the appellant used, but that she did not see the handle, only the barrel; that the scarf looked like the scarf the appellant had tied over his face; that the coat looked like the coat the appellant was wearing at the time he had sexual intercourse with her, and the trousers looked like those the appellant had on at the time she saw him.

The state also offered evidence showing that the coat as well as the trousers had stains which, upon laboratory tests, proved to be from seminal fluid and intact spermatozoa.

The appellant testified and denied any connection with or knowledge of the rape. He testified and offered evidence to the effect that he had lost his billfold during the afternoon, after he put the lawyer's receipt in it. He attempted to explain the presence of seminal stains and spermatozoa on his coat and pants and testified that on the week end before he took his girl friend to a motel in Henderson and, after having intercourse with her while both were in the nude, had another act of intercourse with her after he had dressed and while wearing his coat.

He denied having the light bulb or the scarf in his coat pocket.

■ The jury rejected the defense of alibi and accepted the testimony of the prosecutrix, and we find the evidence sufficient to sustain the verdict.

■ Appellant's court appointed counsel contends that the court erred in admitting in evidence the coat, trousers, pistol and light bulb.

This contention is predicated upon the claim that the arrest of appellant was unlawful, the officers not having had a warrant authorizing either an arrest or search.

The evidence shows that the officers, having been informed of the rape and having obtained the billfold found in the car, checked with the firm by which the appellant and his brother were employed and obtained the address of both. After going to the address of the appellant and failing to find him, the officers proceeded to his brother's apartment where they entered after the brother opened the door and, according to the officers' testimony, invited them in.

Officer Montgomery testified in the absence of the jury that he was handed the billfold at about 11:30 P.M.; that after he found the information in it giving an out of town address and had made an investigation at the company where other papers indicated the appellant was employed, and obtained the address of the appellant and the address of appellant's brother, he proceeded as rapidly as he could to try to find the appellant before he could escape; that there were no courts open at that hour of the night in Dallas County and he did not have time to find a judge; that he arrived at the apartment where the appellant was arrested at 1:15 A.M.

We overrule the contention that the arrest was unlawful. See Romans v. State, 153 Tex.Cr.R. 474, 220 S.W.2d 891.

We find no error in the admission in evidence of the coat, pants, pistol, light bulb and scarf.

■ Complaint is also made that certain sex magazines were exhibited before the jury but were not introduced in evidence. We find in the statement of facts where, on cross-examination, the appellant was asked: "Q. Are these your books (indicating a group of books)?"

In the amended motion for new trial sworn to by the appellant it was alleged that Assistant District Attorney Allen "exhibited a number of sex magazines in the presence of the jury * * *."

We fail to find any proof or certification that the books referred to in the question above quoted were "sex magazines" or that Mr. Allen exhibited sex magazines in the presence of the jury. We overrule the claim of error in this regard.

The amended motion for new trial alleged jury separation, and a motion for mistrial appears in the transcript, reasons alleged being that during the argument of State's Attorney Alexander, one of the jurors became sick in the jury box and rose from the jury box with another juror and separated from the remainder of the jury, and as they entered the hallway they were joined by Mr. Alexander " * * * and

the door closed behind them before a bailiff was present, and the two jurors and the assistant district attorney were out of the courtroom, out of the presence of the remainder of the jury, out of sight and out of hearing distance to the defendant or either of his attorneys."

There is no certification and no proof of the occurrence alleged having in fact occurred.

■ The amended motion for new trial also alleged that the juror Theresa Owens became ill during argument and while the jury was deliberating and was given some kind of medicine by other jurors which caused her "to become very sleepy, confused and dizzy to such an extent that she did not ever at any time cast any vote in connection with the punishment of this defendant."

There were also other complaints of jury misconduct in the amended motion for new trial and the affidavit of the juror Theresa Owens was attached and made a part of said motion.

The state controverted the allegations of the amended motion for new trial and attached to their answer affidavits of jurors and others to support their denial of such allegations.

The trial court's order recites that, having heard the amended motion for new trial, he was of the opinion that it should be refused. If there was any evidence introduced, whether by affidavit or testimony before the court, such is not shown in the record.

We do not deem it necessary to set out the issues raised by the amended motion for new trial and the controverting answer, including the affidavits attached thereto. Such affidavits do not appear to have been introduced as evidence and may not be considered as evidence. Shelton v. State, 155 Tex.Cr.R. 187, 233 S.W.2d 148; 41 Tex. Jur.2d 389, and cases cited.

The remaining ground for reversal relates to arguments of counsel for the state and objections thereto which are shown by a transcript of arguments approved by the trial judge and agreed to by counsel.

■ The record shows that Assistant District Attorney Allen argued that the jury were the ones to say whether the prosecutrix goes throughout the rest of her life feeling fear that the defendant will come back and find her and kill her, as he said he would, and argued: "* * * The only way that can be prevented is for this jury to assess the supreme punishment, because he deserves it under the facts and I say any man, black or white, deserves it * * *."

Counsel for appellant interrupted the argument at this point and objected to the statement "the only way that it can be prevented is to assess the supreme penalty * * *", the ground being "it is only counsel's unsworn statement."

The court sustained the objection and, pursuant to appellant's request, instructed the jury to disregard the remark.

We overrule the contention that the remarks of the assistant district attorney were so prejudicial as to require reversal, despite the court's instruction to the jury to disregard them.

The evidence is sufficient to sustain the conviction and we find no error that would warrant a reversal. From the record it appears that the appellant received a fair trial.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

DICE, Commissioner.

Appellant insists that we were in error in concluding that no proof was made of the allegations in his amended motion for new trial of alleged jury separation and misconduct, and in his motion for rehearing—which is supported by the affidavit of

his attorneys—states that at the time of the hearing of the motion for new trial it was agreed that the court would consider all of the affidavits filed in the cause as if they were evidence presented at the hearing.

We have, in view of the penalty assessed, examined all of the affidavits presented on the motion for new trial.

■■ Such affidavits consist of the appellant's affidavit, that of his two attorneys and the juror Theresa Owens, and fourteen counter affidavits filed by the state, including the affidavits of the other eleven jurors, two of the court bailiffs and Assistant District Attorney W. F. Alexander. It was the province of the court to resolve any issue presented with reference to the claim of jury separation and misconduct, and, in our opinion, the trial court did not err in refusing to grant a new trial.

Remaining convinced that the cause was properly disposed of in our opinion on original submission, the motion for rehearing is overruled.

Opinion approved by the Court.