Mary WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 41897.

Court of Criminal Appeals of Texas.

April 2, 1969.

Rehearing Denied May 28, 1969.

Fred Hudson, Jr., Center, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is murder without malice; the punishment, 5 years.

At the outset we are confronted with appellant's hydra-headed challenge as to the sufficiency of the evidence to sustain the conviction. In addition to a general assault, she centers her attack upon the evidence relating to the cause of death and the intent to kill.

The State's evidence reflects that in the early morning hours of Sunday, January 22, 1967, the 46-year-old deceased, James Willis Hill, in company with Ernest Baggett and Bobby Joe Cassell, both in their very

early twenties, all of whom had been drinking beer, arrived at the Toledo Cafe in the City of Center in Cassell's car. They parked behind appellant's car. At this point appellant and one Jim Langford emerged from the cafe and Langford remarked that appellant's car had a flat tire. After pulling to the side of appellant's car the deceased asked if he could assist with the flat tire and appellant replied "The best damn thing you can do is move your m____ f____ ass on." Stating "Lady, have you ever heard of friendship," Hill, who appeared peeved, got out of Cassell's car and approached appellant's car. Appellant then fired 4 or 5 shots from a pistol at the deceased. During the shooting Langford was heard to say "If you can't kill him, give me the damn gun, I will." The deceased then returned and leaned up against Cassell's car and he asked "Why did the lady shoot me?" The deceased was then taken to a local hospital and transferred to the Veterans Hospital in Shreveport where he expired on January 23, 1967.

Testifying in her own behalf, the 37-year-old appellant, mother of four, related that she and Langford, a married man with whom she had been keeping company, had been across the Louisiana border earlier in the evening drinking beer and dancing; that upon their return to Center they stopped at the Toledo Cafe; that upon their departure Langford had jokingly stated her car had a flat tire but she had determined the car did not have a flat tire and entered the automobile; that the deceased and his companions took up the subject matter of the flat tire; that she asked them to mind their own business; that she would have left except that Langford could not find the ignition key; that the deceased threatened to "stomp" her and her "smart alec" boyfriend into the concrete; that when it appeared to her that the three men were getting out of the car she feared she was going to be abducted and raped; that she pulled a pistol from her purse and fired at the approaching Hill (the deceased); that Hill reached through the

car window and began to scuffle with her pouring or spilling beer over her; that one shot fired smashed her car window; that the deceased left her side of the car and went to the passenger side where he briefly struggled with Langford before he returned to Cassell's car; that finding the ignition key she left the scene not knowing that the deceased had been shot.

Langford generally corroborated the appellant's testimony.

The jury was charged on the law of self defense.

■ Appellant insists that the cause of death was not established beyond a reasonable doubt. This claim is apparently based on the fact that while Dr. Darron testified the cause of death was without question a gunshot wound of the abdomen he related that the deceased's abnormal liver condition (serohepatitis) and his acute intoxication at the time of the injury were contributing causes of death. He also testified that while the contributing causes would not have proved fatal in themselves they "complicated the condition considerably" and "possibly" appellant would have survived the gunshot wound if it had not been for them.

Wright v. State, Tex.Cr.App., 388 S.W. 2d 703, has been decided contrary to appellant's contention. There the Court said:

"The destruction of life must have been occasioned by the act of appellant, but appellant is responsible if his act of shooting contributed to the death, though there were other concurring causes. Tomerlin v. State, Tex.Cr.App., 26 S.W. 66; Rhodes v. State, 39 Tex.Cr.R. 332, 45 S.W. 1009; Ex parte Pettis, 60 Tex. Cr.R. 288, 131 S.W. 1081."

See also Articles 1201 and 1202, VA.P.C.; 29 Tex.Juris.2d, Sec. 68, p. 71; Adams v. State, 150 Tex.Cr.R. 431, 202 S.W.2d 933.

Further, in 4 Branch's Anno.P.C.2d, Sec. 2025, it is said:

"If deceased was suffering from a disease or a wound and defendant's shot

or blows hastened the death of deceased defendant would be responsible for the death. An accused cannot speculate as to how long his victim may live with an incurable disease or mortal wound when he inflicts a wound that hastens the death or the action of the fatal disease."

There is no evidence to warrant a finding that the deceased Hill died from causes arising independent of the gunshot wound and no suggestion of neglect or improper treatment. Appellant's claim is without merit.

As to appellant's contention that the evidence fails to establish an intent to kill, we note that it is undisputed that appellant had a pistol and fired 4 or 5 shots at the deceased inflicting a gunshot wound of the upper right abdomen which proved fatal.

Article 45, V.A.P.C., provides "The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."

"The intent of the defendant may always be ascertained or inferred from the means used and the wounds inflicted by him." 4 Branch's Anno.P.C., 2d. ed., Sec. 2190, p. 535–536.

■ Further, the trier of the facts may infer intent to kill from any facts in evidence which to his mind prove existence of such intent to kill, as from use of a deadly weapon. Hall v. State, Tex.Cr.App., 418 S.W.2d 810. See also Sadler v. State, Tex. Cr.App., 364 S.W.2d 234 (intent to kill is either presumed or established by facts in murder prosecution).

■ "It is well settled that when the weapon used in effecting an unlawful killing is a deadly weapon, per se, the intent to kill is presumed as a matter of law." Baylor v. State, 151 Tex.Cr.R. 365, 208 S.W.2d 558. See also 20 Texas Digest, Homicide, ☞ 145.

■ A pistol is a "deadly weapon" per se and, when used to shoot another in the abdomen, under circumstances presented, the law presumes an intent to kill. See Valle v. State, Tex.Cr.App., 438 S.W.2d 583; Barr v. State, 146 Tex.Cr.R. 178, 172 S.W.2d 322; Baylor v. State, supra.

■ Viewed in the light most favorable to the jury's verdict, we find the evidence sufficient to support the conviction. Both prongs of ground of error #7 as well as ground of error #10 are overruled.

■ In his first ground of error appellant contends the trial court erred in refusing to entertain her application for a suspended sentence. The Suspended Sentence Act (former Articles 776–781 V.A. C.C.P., 1925) was repealed by the 1965 Code of Criminal Procedure (effective January 1, 1966). See Article 54.02, V.A. C.C.P. Moats v. State, Tex.Cr.App., 402 S.W.2d 923; Ex parte McCarter, Tex.Cr. App., 415 S.W.2d 409; Attorney General's Opinion M–27 (1967). Nevertheless, appellant relies upon Article 1257a, V.A.P.C. which prescribes in part "Provided, however, that in all convictions under this act and where the punishment assessed by the jury does not exceed five years, the defendant shall have the benefits of the suspended sentence act."

She also calls our attention to that part of Article 54.02, Sec. 2(a), supra, which provides that any part of the penal code containing special or specific provisions of criminal procedure covering specific instances are saved from repeal.

First, we do not view the quoted portion of Article 1257a, supra, as containing specific instances of criminal procedure in itself. Further, at the time Article 1257a, supra, was enacted in 1927 the Suspended Sentence Law or Act was not applicable to murder cases. The purpose of the quoted portion of such statute was to remove that restriction where the punishment assessed did not exceed five years. In view of the clear intent of the Legislature to

repeal the Suspended Sentence Law and the procedure therein prescribed,[1] we find no merit in appellant's contention that such law and procedure is still "alive and well" as to murder cases where the punishment assessed does not exceed five years. Ground of error #1 is overruled.

Next, appellant contends reversible error occurred when the clerk, without the knowledge of the court or appellant's counsel, handed the jury empaneled for the case copies of unsigned general instructions and admonishments. It appears to be appellant's position that the same constituted a charge to the jury not in compliance with Article 36.14, V.A.C.C.P., and that some of the instructions related primarily or exclusively to the trial of civil cases, i. e., special issues, discussion of insurance or attorney fees. The trial court found that no harm or prejudice had resulted and overruled the motion for mistrial. These admonitory instructions appear to have been prepared in accordance with Rule 226a, Secs. I and II, Texas Rules of Civil Procedure.

It must be borne in mind that many jury panels for the trial of criminal cases are selected and summoned in the same manner as provided in civil cases. See Article 33.09, V.A.C.C.P. When this provision is considered with the provisions for interchangeable jury panels, Article 2101, V.A.C.S., etc., it stands to reason that many jurors chosen in criminal cases will have been exposed to the admonitory instructions required by Rule 226a, supra.

■ Many of these admonitory or cautionary instructions are customarily used by criminal trial judges at the time of the voir dire examination of the jury panel and at various intervals of a trial to guard against jury misconduct. See Long v. State, 158 Tex.Cr.R. 651, 258 S.W.2d 818. The giving of such instructions is largely within the discretion of the court, Hernandez v. State, 169 Tex.Cr.R. 418, 334 S.W.2d 299, and is often salutary in effect. 31 Tex.Juris.2d., Instructions, Sec. 83. See also Pope, The Judge-Jury Relationship, 18 SWLJ 46. Cf. also Article 35.17, Sec. 2, V.A.C.C.P., and the Special Commentary thereto.

■ In view of the charge subsequently submitted, the failure to request the court to instruct the jury to disregard any portion of the unsigned written instructions not deemed applicable to criminal cases, and the record before us, we are unable to conclude that appellant has shown harm.

■ Ground of error #3 is a double barreled assignment. First, appellant contends the court's charge as to adult probation at the penalty stage of the proceedings was inadequate. In absence, however, of a written objection or special requested charge timely filed as required by Articles 36.14 and 36.15, V.A.C.C.P., the ground of error as to the charge is not before us for review. See Seefurth v. State, Tex.Cr.App., 422 S.W.2d 931; Ivey v. State, Tex.Cr.App., 425 S.W.2d 631.

■ Second, appellant urges that the court erred in refusing to advise the jury that no further instructions on probation could be given without notifying appellant's counsel or giving him an opportunity to object. The hearing on the motion for new trial reveals that the bailiff informed the court that the jury requested additional information or charges on probation after

---

1. See Erisman, "Introduction to 1965 Revision, Texas Code of Criminal Procedure," Vol. I, V.A.C.C.P., p. xl, XVII; See both Interpretative and Special Commentaries to Article 42.12, V.A.C.C.P.

It is true that Article 38.29, V.A.C.C.P., relating to impeachment of witnesses makes reference to witnesses under suspended sentence. It is clear though that this reference was only intended to provide for those individuals who become witnesses and who had been placed on suspended sentence under the former law prior to January 1, 1966 (the effective date of the 1965 Code of Criminal Procedure). See also Article 37.07, Sec. 3, V.A.C.C.P., as amended, 1967.

their retirement following the hearing on punishment. Instead of having the communication reduced to writing the trial judge orally instructed the bailiff to refer the jury to the court's charge and to tell them he could not give further instructions. Such action was clearly in violation of Article 36.27, V.A.C.C.P., which trial judges are admonished to follow.

■ "If the jury after retirement request additional instructions upon a question of law and the subject matter of the request is proper there can be no question but what the Court should give such instructions in writing. If the request is improper, the Court should so inform the jury in writing." Allaben v. State, Tex. Cr.App., 418 S.W.2d 517.

■ We need not determine if the trial court's failure to comply with Article 36.-27, supra, constitutes reversible error despite the fact he merely referred the jury to the original charge and refused to further answer their inquiry and did not give additional instructions. This is so because there appears to have been no necessity to have submitted the issue of probation to the jury in the first place. Though appellant timely filed her sworn motion therefor we find no proof or evidence before the jury to support the same. See Article 42.12, Sec. 3, V.A.C.C.P. If evidence was offered at the penalty stage of the proceedings it is not in the record before us. The certification of the court reporter reflects that the transcription of his notes contains "all the evidence adduced upon the hearing of said trial." After notice of completion of the record, Article 40.09, Sec. 7, V.A.C.C.P., there were no objections to the record. After the prescribed 15 days the court approved the record on appeal.

■ Under these circumstances, we fail to perceive reversible error. Ground of error #3 is overruled.

Next, appellant contends that trial court erred in failing to grant a new trial because

of jury misconduct. She claims the affidavit of the juror Britton establishes improper consideration of the parole law in assessing punishment and that his affidavit is uncontroverted.

■ It is well established that a motion for new trial alleging that there was jury misconduct must be supported by the affidavit of a juror or some other person who was in a position to know the facts. See Vyvial v. State, 111 Tex.Cr.R. 111, 10 S.W.2d 83; Brown v. State, 160 Tex.Cr.R. 150, 267 S.W.2d 819; Procella v. State, Tex. Cr.App., 395 S.W.2d 637; Clifton v. State, 170 Tex.Cr.R. 245, 339 S.W.2d 902; Marquez v. State, 172 Tex.Cr.R. 363, 356 S.W. 2d 797; Clayton v. State, 172 Tex.Cr.R. 595, 361 S.W.2d 385.

■ The record shows that such affidavit attached to the motion for new trial was never introduced at the hearing thereon nor was the appellant prevented from offering the same at the hearing at which the trial court heard oral evidence on other issues raised in the motion for new trial.

In 41 Tex.Juris.2d, New Trial, Sec. 175, p. 389, it is said: " * * * an affidavit attached to the motion is but a pleading that authorizes the introduction of supporting evidence. It is not evidence in itself; and in order to constitute evidence it should be introduced as such on the trial of the motion.

"Where the motion is contested by the state, the court is not bound by affidavits attached to the motion, and, if the record shows that oral evidence was heard, it will be assumed on appeal that the trial judge elected to determine all issues of fact otherwise than by affidavit." See also Davis v. State, Tex.Cr.App., 419 S.W.2d 648; Parker v. State, Tex.Cr.App., 372 S.W.2d 320; Shelton v. State, 155 Tex.Cr.R. 187, 233 S. W.2d 148.

In Killingsworth v. State, 154 Tex.Cr.R. 298, 226 S.W.2d 635, it was held that a juror's affidavit with reference to jury deliberations merely incorporated in the mo-

**660**

tion for new trial should be introduced in evidence at the hearing on such motion and the court given the opportunity to hear evidence thereon.

Ground of error #4 is overruled.

■ In his fifth ground of error appellant complains of the trial court's refusal to allow her to impeach the State's witness Baggett by showing he was on "a one-year jail sentence probation." Despite his announced intention to perfect an informal bill of exception "in accordance with the records of the County Court of Shelby County, Texas" the same was not done. Nothing is presented for review. We have no way of knowing whether the conviction, if any, was a felony or a misdemeanor involving moral turpitude, which if not final, was still admissible under the provisions of Article 38.29, V.A.C.C.P., relating to probations which have not expired.

Ground of error #5 is overruled.

■ Further, appellant contends the court deprived her of evidence reflecting on the state of mind of the deceased when she was prevented by the State's objections from eliciting from State's witnesses Baggett and Cassell whether the deceased had discussed, prior to the shooting, his discharge from the Center police force earlier in the same evening. Here again what their answers would have been if they had been permitted to answer the questions is not in the record before us. Nothing is presented for review. Thomas v. State, Tex.Cr.App., 438 S.W.2d 112; Beasley v. State, Tex.Cr.App., 428 S.W.2d 317; East v. State, Tex.Cr.App., 420 S.W.2d 414. We do observe that the witness Baggett related the deceased had not discussed "any of his troubles" with him, and two other witnesses subsequently testified without objection that the deceased was discharged earlier on the night in question from the City of Center police force.

Ground of error #6 is overruled.

■ In his eighth ground of error appellant complains of the trial court's re-

fusal to heed her written objection and instruct the jury "to disregard the actions, if any, of Jim Langford as presented in the evidence of this case." Clearly this objection is too broad and vague and does not distinctly specify the ground of error and does not point out to the court which actions of appellant's companion at the time in question and a defense witness to which he has reference. See Article 36.14, V.A. C.C.P.

Ground of error #8 is overruled.

■ Likewise, for the same reason, we overrule appellant's ground of error #9 that the court erred in failing to instruct the jury, despite her timely written objection, to disregard "any real or imagined violations of the law" on the part of the appellant "aside from the offense charged." In light of the charge given and the failure to distinctly specify and point out what extraneous offense or offense to which appellant had reference, no error is presented.

Finding no reversible error, the judgment is affirmed.

WOODLEY, P. J., concurs in the result.