Herman Leslie THOMPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 82 157 CR.

Court of Appeals of Texas,
Beaumont.

Dec. 8, 1983.

Rehearing Denied Jan. 4, 1984.

Discretionary Review Refused
May 2, 1984.

Hugh O'Fiel, Beaumont, for appellant.

John R. DeWitt, Asst. Criminal Dist. Atty., Beaumont, for appellee.

OPINION ON STATE'S MOTION
FOR REHEARING

BROOKSHIRE, Justice.

The opinion of the Court filed October 19, 1983, is hereby withdrawn. In its stead this opinion is filed.

Appellant was found guilty by a jury of murder and the jury assessed punishment at forty-seven years in the Texas Department of Corrections. Appellant has perfected appeal to this Court. The murder is alleged to have occurred on or about October 31, 1981. Appellant has no ground of error contending insufficiency of the evidence to sustain the conviction.

His first ground of error asserts:

"The District Court committed reversible error in failing to grant the Defendant's requested charge on cause of death ...."

Appellant requested, inter alia, the following charge which was denied by the court:

"If you believe, or have a reasonable doubt thereof, that the death of the Deceased, MARGIE ANN TRAYLOR, was not caused by being beaten and stabbed, but was caused in some other way, you will find the Defendant not guilty.

"Unless you find from the evidence beyond a reasonable doubt that the death of the Deceased, MARGIE ANN TRAYLOR, if any, was caused by having been beaten and stabbed at the hands of the Defendant, HERMAN LESLIE THOMPSON, you will say by your verdict NOT GUILTY; or if you have a reasonable doubt thereof, you will find the Defendant not guilty."

Appellant took the stand and readily admitted having severely beaten the deceased the night of her death. In fact, he took her to the hospital where she later died. It was his contention, however, that she fell down the stairs of her apartment and that this caused her death.

Appellant contends that an affirmative and independent defense as to the cause of death was raised by the evidence and he urges a remand of the cause for new trial because of the trial court's failure to grant Appellant's requested charge on that theory.

Appellant advances and urges as controlling *Hill v. State*, 585 S.W.2d 713 (Tex. Crim.App.1979). The pertinent facts of that case raised the defensive issue that death *resulted from causes other than the acts alleged against Hill.* Both Hill and the State presented expert witnesses on the cause of death. The expert witnesses testified after having examined autopsy reports and photographs of the deceased. They differed sharply concerning cause of death. In *Hill, supra,* the defensive theory on cause of death was clearly and independently raised by the evidence. Such is *not* the situation in the case at bar.

Here, the evidence of the pathologist, as well as the other evidence, did *not* raise the issue that death "was not caused by being beaten and stabbed, but was caused in some other way", as is Appellant's defensive theory submitted in his proposed instruction.

The pathologist testified at some length concerning the cause of death. At the autopsy, he said, he observed multiple episodes of trauma, including fracture of a cervical vertebra (in layman's terms, a broken neck), hemorrhage over the back of the head, an epidural hemorrhage, a subarachnoid, and a subgaleal hemorrhage, with multiple bruises, lacerations, abrasions involving the scalp, face, upper extremities, trunk and lower right extremity. He said that the cause of death was due to the fractured cervical vertebra, and that a final episode, "the final thing", was cardiac arrest. The cardiac arrest was associated with and directly related to the victim having sustained a spinal cord shock from her broken neck. The deceased, he said, had sustained extensive injury from what appeared to be several instruments including a sharp instrument producing incision, a blunt instrument producing lacerations in the scalp, some kind of instrument producing bruises by some round object, and by one instrument that was threaded or serrated. All in all, he said, these wounds predisposed the victim to death from cardiac arrest. The immediate cause of death was cardiac arrest related to the other trauma. He said the multiple trauma probably contributed or predisposed the victim to react more acutely to the spinal cord shock. The injuries were severe.

More evidence of the injuries of the deceased came from the receiving nurse of St. Elizabeth Hospital, Beaumont. She said the victim entered the emergency room, being pushed in a wheelchair, at about 1:00 a.m. on the date of death. The victim was slumped in the chair, dressed only in a robe. The robe was covered with blood and blood stained. The victim was taken immediately to one of the trauma rooms. She was not able to sit upright. The nurses had difficulty getting her on a stretcher. She was not able to stand. As they put her onto the stretcher, the robe

fell open and they saw the extent of the injuries.

There was tremendous bruising about. They observed bruises on the victim's shoulder. There were huge bruises on her thighs and across her buttocks. There was bruising on her face, chest and abdomen. She had bruises about the knees and lower legs. Some of the bruises were shaped like a bit-type object (suggesting the shape of an object by which she was struck). There was extensive swelling with "blueness and then fades to greens and colors." Both eyes were blackened and swollen. The nurse thought the woman had been beaten.

The victim had a large cut over her eye. She was bleeding from multiple cuts to her fingers and stab-like wounds to her arm. Part of the victim's right hand, a part of the palm, was nearly severed from a very large cut. There were eight or nine little cuts on each forearm and cuts on most of her fingers. She had stab wounds in her head and cuts and puncture-type injuries to her abdomen. There were cuts to the lower legs. The nurses observed that there were no bandages or tourniquets or anything to prevent the bleeding. She was bleeding a tremendous amount from all of the wounds; with a small amount of bleeding from the cuts, scrapes and from a puncture-type wound on the abdomen and from three cuts across the upper abdomen.

The nurse said the woman was in very bad condition. She could not assist the nurses in any way. X-rays were taken. Very shortly after she had been brought into the emergency room, the victim suffered cardiac arrest. At this point she was in very serious condition—critical. She had difficulty breathing. She was in a tremendous amount of pain. Upon cardiac arrest, cardiac pulmonary resuscitation was administered. The heart started again. The victim did not regain consciousness. Intravenous fluids were thereupon administered. The nurses could not get any blood pressure increase. She was administered blood. She was given approximately eight units of blood which contained approximately 500 cc's in each unit. In an average person, the total amount of blood would be approximately 16 units. There was no improvement at all during the treatment. It was a downhill course. The victim stayed in the emergency room approximately five hours. During this time the nurses and doctors worked vigorously, replacing the fluids she had lost, replacing the blood, but the attendants still were unable to obtain blood pressure.

It was decided the victim would have to go to surgery to further explore the extent of injuries. She was taken upstairs to the operating suite. In the operating suite, she had her third cardiac arrest. Her heart stopped completely just after 6:00 a.m.

The State further introduced approximately 68 exhibits, mainly photographs. Many of these summarized the injuries sustained by the victim as set forth above. Other numerous pictures depicted what appeared to be *blood at various parts of the victim's apartment.* This suggested, *albeit* circumstantially, that she was hurt badly and suffered serious bodily injuries inside the apartment. Evidence from one of the officers details the many places in the apartment where there was found what appeared to be blood.

It would serve no useful purpose to further detail the myriad bloody facts. They have been reviewed in depth to show overwhelmingly that no fact issue existed as to Appellant's "defense theory".

■ The evidence demonstrates that the death was a result which would not have occurred but for the acts and conduct of Thompson, as charged against him in the indictment.

The trial court's charge correctly instructed the jury on *causation* pursuant to *TEX.PENAL CODE ANN. Sec. 6.04* (Vernon 1974).

■ The evidence does not raise the issue of the "affirmative defense" because Thompson's conduct *was* clearly sufficient to have caused the death and any concurrent cause would *not* have occurred *but for* Thompson's conduct.

■ Also, a person is criminally responsible for causing a result—a death in this case—even though he desired, contemplated or risked a different offense. *TEX.PENAL CODE ANN. Sec. 6.04(b)* (Vernon 1974). Here, the resulting death was caused by Thompson's assault with intent to inflict serious bodily injury and, during the course of the assault, Thompson committed acts and conduct clearly dangerous to human life whereby he caused the death. *TEX.PENAL CODE ANN. Sec. 19.02(a)(2)* (Vernon 1974). This was the theory of the State's case.

Again, the record in this case shows that even if the *last episode of life* was heart failure and even though Appellant asserted the deceased fell down the stairs; nevertheless, the death was due to, and not independent of and wholly disconnected from, all the other intentional bodily injuries caused by Thompson. It is this writer's opinion, therefore, that this case is different from *Hill, supra,* because, in that case, the evidence fairly raised the defensive issue that death *resulted from causes other than the acts alleged against Hill.*

■ If the acts and conduct of the defendant, alleged in the indictment, caused the death then the defendant is responsible even though there were other contributing causes. *Wright v. State,* 388 S.W.2d 703 (Tex.Crim.App.1965); *Jones v. State,* 644 S.W.2d 530 (Tex.App.—Corpus Christi 1982, disc. rev. ref'd). Further, the State is not required to prove beyond a reasonable doubt that the act alleged in the indictment alone caused the death. *See Walker v. State,* 440 S.W.2d 653 (Tex.Crim. App.1969). In *Wright, supra,* the court said, at page 706:

"The destruction of life must have been occasioned by the act of appellant, but appellant is responsible if his act ... contributed to the death, though there were other concurring causes...."

In *Walker, supra,* the Court said, at page 656:

" 'If deceased was suffering from a disease of a wound and defendant's shot or blows hastened the death ... defend-

ant would be responsible for the death. An accused cannot speculate as to how long his victim may live with an incurable disease or mortal wound when he inflicts a wound that hastens the death or the action of the fatal disease.' " (quoting from *4 Branch's Ann.P.C. 2d Sec. 2025* )

Because the evidence in the case at bar fails to raise the issue that the victim died from causes arising independently of the acts and conduct of the Appellant, as alleged in the indictment, first ground of error is overruled.

■ In the second ground of error, the Appellant contends that reversible error was committed because the trial court failed to grant the Appellant's requested charge on accident. The requested charge on accident was worded thusly:

"The Law recognizes the defense of accident to the charge of a crime.

"You are instructed that no act done by accident is an offense against the law. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the Defendant, HERMAN LESLIE THOMPSON, killed the Deceased, MARGIE ANN TRAYLOR, but you further believe from the evidence or have a reasonable doubt that the death of the Deceased, MARGIE ANN TRAYLOR, was the result of an accident while the Deceased and the Defendant were struggling or scuffling at the top of the staircase, then the Defendant [Defendant] would be not guilty and should be acquitted. (Defendant specifically requests that should the Court include this Requested Jury Instruction, along with any of the foregoing Requested Jury Instructions, that this Requested Jury Instruction No. ____ be placed in the charge before such other charges dealing with culpable mental states so as not to appear to condition this Instruction on Defendant's not having been mentally culpable or negligent or careless.)"

After careful and detailed review of the record and evidence in this case, we find and hold that the second ground of error is without merit and overruled.

The third ground of error argues that the trial court committed reversible error in failing to grant the Appellant's motion for instructed verdict of not guilty. Again, in view of the totality of the record and evidence in this case, a motion for instructed verdict of not guilty should not have been granted. The third ground of error is overruled.

Ground of error number four is:

"The Trial Court erred in failing to grant this Defendant's motion for mistrial as to extraneous offenses; i.e., an alleged previous assault by this Appellant for the sole purpose of inflaming the jurors [jurors'] minds."

In the course of the trial Mary Henderson, a witness for the State, during direct examination, responded to a question as follows:

"Q. As you were riding to the pizza place, what happened?

"A. We were going to get a pizza and all of a sudden—she was sitting in the front seat and he was sitting in the back seat, and he started pulling her hair and she told him to quit and he never did quit, so she turned around and she was hitting him, so I stopped the car and he pulled out a knife and said 'I'll kill you.'

"MR. O'FIEL: Your Honor, I'm going to object to any extraneous offenses.

"THE COURT: Sustained.

"MR. O'FIEL: And I would ask that the jury be instructed to disregard the testimony.

"THE COURT: The jury is so instructed.

"MR. O'FIEL: We would ask for a mistrial at this time, Your Honor.

"THE COURT: That is denied, sir."

■ We hold that inasmuch as the trial court immediately sustained the objection and, thereafter, the jury was definitely and unequivocally instructed to disregard that testimony, that no reversible error occurred. Indeed, if any error is shown by the alleged extraneous offense we find that it was cured by the immediate rulings and instructions of the trial judge. *See Maddox v. State,* 591 S.W.2d 898, at 903 (Tex. Crim.App.1979). We think there is another cogent and compelling reason for overruling the fourth ground of error. *TEX.PENAL CODE ANN. Sec. 19.06* (Vernon 1974) provides:

"In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

We hold, under our record, that this statute by its very terms effectively overrules Appellant's ground of error number four.

■ The Appellant's fifth ground of error is directed towards a prejudicial jury argument of the prosecution by injecting unsworn testimony of either personal knowledge or opinion of the prosecutor concerning the Appellant's guilt. However, the record shows that an objection was made to what the prosecutor "probably believes himself, because that would be testifying." The trial court immediately sustained the objection. Then the Appellant's able attorney asked that the jury be instructed to disregard that argument. Immediately the court gave the desired instruction and instructed the jury to disregard that matter. We find no reversible error occurred. *See and compare Parr v. State,* 575 S.W.2d 522 (Tex.Crim.App.1978).

■ Appellant's ground of error number six urges that the trial court erred in failing to grant the Appellant's motion for mistrial because of the prosecutor informing the jury in jury argument during the punishment phase that this Defendant would receive credit for jail time and even credit for more time than this Defendant

had actually served thereby invading the province of the jury.

We perceive that the ground of error—6th—does not fit the arguments and authorities proffered and advanced by the Appellant. We perceive that the matter objected to had nothing to do with any jury argument but took place during the punishment phase of a bifurcated trial wherein the below colloquy took place:

"BY MR. COOPER:

"Q. Herman, you say that you have been in jail for ten months, is that right?

"A. Yes, sir.

"Q. And you know that you get credit for every day that you have been in jail, is that right?

"A. I've been told that, sir, yes.

"Q. And haven't you also been told that even while you are in jail you build up even more credit than ten months, is that right?

"MR. O'FIEL: Your Honor, I'm going to object to this line of questions. That's invading the province of the jury.

"THE COURT: Sustained.

"MR. O'FIEL: And I would ask that the Jury be instructed to disregard all such comments about credit for good time, if such occurrs [occurs].

"the [THE] COURT: So instructed.

"MR. O'FIEL: We further ask for a mistrial at this time.

"THE COURT: That's denied.

"MR. COOPER: I have no further questions."

Although we confidently think that the sixth ground of error is not properly briefed or argued, we will, nevertheless, address it. Addressing this point on its merits—as we understand it—we do not perceive reversible error. The Appellant relies on *Xanthull v. State*, 172 Tex.Cr.R. 481, 358 S.W.2d 631 (1962). The *Xanthull case, supra,* is distinguishable on the record and also on the crucial fact that the court's ruling was startlingly different. Moreover, the trial court instructed the jurors that the members of the jury must not

discuss or consider how long the Appellant would actually be required to serve in regards to the punishment term actually assessed. The trial judge charged the jurors that:

"Under our law, such matters come within the exclusive jurisdiction of the Board of Pardon and Paroles and the Governor, and are not to be considered by you in determining what you believe the proper punishment should be."

The sixth ground of error is overruled.

The record was filed in this Court on December 20, 1982. On January 19, 1983, the State filed a Motion to Modify the Record. On January 31, 1983, after a hearing, the court found that the original transcription by the reporter of the prosecutor's argument was incorrect and sent to this Court a supplemental record "to speak the truth". We do not question the sincerity or integrity of the able trial judge, but only question whether or not he has the power to act in this manner under our Code of Criminal Procedure.

*TEX.CODE CRIM.PROC.ANN. art. 44.-11* (Vernon Supp.1982–1983) (amended effective September 1, 1981), provides:

"Upon the appellate record being filed in the court of appeals or the Court of Criminal Appeals, all further proceedings in the trial court, except as to bond as provided in Article 44.04, *shall be suspended and arrested* until the mandate of the appellate court is received by the trial court...." (emphasis added)

 Except as to bond (*art. 44.04*), this article seems quite emphatic and clear to us. Once the record is filed in this Court, the trial court no longer may correct or supplement it (except for lost or destroyed portions provided for in *art. 44.11,* not quoted in this opinion). Therefore, we had no authority to consider the supplemental record filed in this Court. Nevertheless, we sanguinely hold that there was no reversible error as shown in the record, as filed in this court, on December 20, 1982, before the State filed a motion to modify the record. Hence, the sentence and judgment below are AFFIRMED.