Darrell L. CAIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 52217.

Court of Criminal Appeals of Texas.

March 9, 1977.

Rehearing Denied April 27, 1977.

Phil Burleson and Michael P. Gibson, Dallas, for appellant.

Henry Wade, Dist. Atty, W. T. Westmoreland, Jr., Doug Mulder and Jon Sparling, Asst. Dist. Attys., Dallas, Robert O. Smith, Dist. Atty. and Herman C. Gotcher, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder with malice under the former Penal Code, wherein the jury assessed punishment at five (5) years' confinement in the Department of Corrections.

The case involved the shooting of a handcuffed 12 year old boy by a Dallas city policeman. The cause was tried in Travis County following a change of venue from Dallas County.

Appellant's grounds of error can be divided into three categories. The first category involves the exclusion of evidence, including among other things, statements by the appellant under the influence of a truth serum which presents a question of first impression in this State. The second category

involves objections made to the court's charge, and the third category relates to the jury arguments of the prosecutors. We overrule all grounds of error and affirm the conviction.

While the sufficiency of the evidence is not challenged, a brief recitation of the facts is necessary to put the discussion of the grounds of error in proper perspective.

It appears from the record that Dallas police officer Roy Arnold was on patrol about 2:30 a. m. on July 24, 1973, when he saw two individuals behind a Fina service station on Cedar Springs Road whom he recognized as the Rodriguez brothers. He broadcast a description and gave their home address, which he knew from past contact with the brothers.

Arnold arrived at the brothers' home which was about four blocks from the station. The appellant Cain, also a Dallas police officer, arrived in a separate vehicle. The two officers then entered the house and arrested the two Rodriguez brothers.

David Rodriguez, Jr., who was 13 years old at the time, testified he arrived home after 10 p. m. on July 23, 1976, where he lived with his brother Santos and his 80 year old grandfather. He stated his grandfather was asleep in the living room and he went to bed in the bedroom, and later heard his brother come into the room and go to bed. He related that in the early morning hours they were awakened by two uniformed police officers, Arnold and the appellant, who handcuffed them behind their backs and told them they were under arrest. They were placed in a patrol car with the deceased, Santos Rodriguez, in the front with Arnold and David in the rear seat with the appellant. They were then taken to the Fina service station. Other officers were at the scene. David related Arnold asked Santos if anybody else had been with them at the station and Santos replied they had not been at the station earlier. David related the appellant Cain took out his pistol, opened the cylinder and twirled it. David could see bullets in chambers of the cylinder and saw no empty chambers. Appellant then shut the cylinder and aimed it at San-

tos' head. David observed no attempt to unload the pistol. Appellant told Santos to tell them if he and his brother had burglarized the service station. When Santos denied the burglary, appellant clicked the gun, stated the pistol had a bullet in it and told Santos to tell the truth. Appellant then clicked the gun and it fired, striking the still handcuffed deceased, Santos Rodriguez, in the head. Appellant jumped out of the patrol vehicle and stated, "Oh, my God."

Dallas Police Officer Jerry Foster stated he was patrolling on July 24, 1973 about 2:30 a. m. when in response to a police broadcast he went to a Fina service station. Upon arrival, he found a rear window broken out, a desk drawer open and a cigarette machine pried open. A little later Officer Arnold's vehicle arrived with the appellant Cain and the two Rodriguez brothers. Foster related he yelled to Arnold that he had received information after arriving at the scene that a third person had been involved in the burglary. Foster then walked over to Arnold's vehicle and laid his arm on the door just as a shot rang out. Foster saw the deceased's head fall down with blood coming out the side. Appellant screamed and jumped out of the car, stating, "My God, My God, What have I done, I didn't mean to do it." Foster then took appellant's pistol away from him 8 to 10 seconds after the shot was fired and 4 or 5 seconds after the appellant exited the car. Foster did not see the appellant open or reload the pistol. When the pistol was unloaded, there were five live rounds and one empty cartridge. The deceased's pulse was checked and an ambulance was called.

Dr. Vincent Di Maio performed the autopsy on the deceased and testified a bullet penetrated the brain causing death. The bullet was removed from the brain. Firearms examiner Allan Jones testified he received the bullet from Dr. Di Maio and performed ballistics tests and expressed the opinion the fatal bullet had been fired from appellant's pistol.

Officer Fred Jenkins testified he had dusted for fingerprints at the service sta-

tion involved and none of the prints recovered were those of the Rodriguez brothers.

Appellant, testifying in his own behalf, related he went to the Rodriguez brothers' home and assisted Officer Arnold in arresting them, and rode with Arnold to the Fina service station. When Santos denied the burglary to Arnold, appellant stated he said, "I will make him tell the truth." Appellant stated he then stuck his pistol down between his legs and unloaded it with the removed bullets making some noise hitting together. He placed the bullets between his legs, glanced at the cylinder and saw no bullets. He then pointed the gun at the deceased, told him to tell the truth, and pulled the trigger. The pistol just clicked. He again told the deceased to tell the truth and there was a bullet in the gun. He then pulled the trigger and the gun went off. He jumped from the car, screaming and crying. He stated, however, that he picked up the removed bullets from his lap before leaving the car and reloaded the pistol before it was taken from him. He admitted that the interrogation of a 12 year old at gunpoint was not proper police practice, and he didn't know why he had done it, but he had no intention of killing the boy, that a bullet evidently hung when being ejected and he did not know that any bullets remained in the pistol, that it was accidental that a bullet remained in the pistol.

Initially we shall consider appellant's contention that the trial court erred in excluding Dr. John Holbrook's testimony as to the results of a narcoanalysis examination of the appellant.

When the exclusion occurred, the appellant perfected a bill of exception. In the jury's absence Dr. Holbrook, who was stipulated to be a qualified psychiatrist, testified that amytal sodium is the drug most frequently used in the so-called truth serum test and is used in conjunction with either an amphetamine or adrenalin, which is a central nervous system stimulant; that this mixture of drugs is traditionally and classically used in the amytal interview, a tool and adjunct of psychiatric practice. He related its use "induces a mild state of

hypnosis called narcohypnosis, and puts the individual in a completely relaxed physiological and mental condition, normally." It "primarily makes them more amenable to questioning."

Dr. Holbrook related that two days after the alleged offense he had administered sodium amytal to the appellant and the drug appeared to work on the appellant, who was simultaneously connected to a polygraph machine which measured respiration, blood pressure, heart rate and skin response. The doctor then stated that after the appellant appeared under the influence of the drug he was asked questions by a trained polygrapher, Ray Jones, in the doctor's presence. Dr. Holbrook related that appellant answered that he had visually checked to see if the pistol was empty, and believed he had removed all bullets before pointing it at the deceased, that he did not intentionally shoot the deceased, that he accidentally shot the deceased, and that he had reloaded the pistol after the shooting. Dr. Holbrook testified in his opinion that these answers were truthful from the appellant's standpoint and "I am pretty sure he answered in terms of what he believed to be the truth. . . ."

In describing the test used by psychiatrists, the doctor stated, " . . . I don't know that the truth is always what one gets in an amytal interview, even more accurately you arrive at a truth that is understood to be the truth by the person who is taking the drug. Of course, as you know, truth in itself is very difficult to determine and assess."

Appellant cites no authority which has permitted the admissibility of a "truth serum" examination. Our research reflects that the results of such test occupy much the same position as the results of lie detector or polygraph and no court has yet recognized the admissibility of the results of such truth serum tests, at least for the purpose of proving the truth of the matter asserted. 29 Am.Jur.2d, § 832, n. 9; 41 A.L.R.3rd 1369, § 4(b), Truth Test—Admissibility of Results; Scientific Evidence in Criminal

Cases, Ch. 15, pp. 565–571 (Moenssens, Moses, Inbau).

The great weight of authority in this country regards results of truth serum tests as inadmissible inasmuch as they have not yet attained scientific acceptance as reliable and accurate means of ascertaining truth or deception. See *State v. Linn,* 93 Idaho 430, 462 P.2d 729 (1969); *State v. White,* 60 Wash.2d 551, 374 P.2d 942 (1962); *Knight v. State,* 97 So.2d 115 (Fla.1957); *People v. Ford,* 304 N.Y. 679, 107 N.E.2d 595 (1952); *People v. Jones,* 52 Cal.2d 636, 343 P.2d 577 (1959); *People v. Johnson,* 32 Cal.App.3d 988, 109 Cal.Rptr. 118 (1973); *Moss v. State,* 492 P.2d 1329 (Wyo.1972); *Lindsey v. United States,* 16 Alaska 268, 237 F.2d 893 (1956); *State v. Lindemuth,* 56 N.M. 257, 243 P.2d 325 (1952); *State v. Levitt,* 36 N.J. 266, 176 A.2d 465 (1961); *Merritt v. Commonwealth,* 386 S.W.2d 727 (Ky.1965); *State v. Thomas,* 79 Ariz. 158, 285 P.2d 612 (1955), cert. den. 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828.

In *Romero v. State,* 493 S.W.2d 206 (Tex. Cr.App.1973), we held that the results of polygraph tests should not be received into evidence, over objection, even if there had been a prior agreement or stipulation. There we quoted with approval from *Henderson v. State,* 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R.2d 1292, cert. den. 342 U.S. 898, 72 S.Ct. 234, 96 L.Ed. 673 (1951), where the Oklahoma Court of Criminal Appeals, after an exhaustive review of existing authority on the reliability of lie detector and truth serum tests, concluded:

"    .    .    . It is therefore apparent that the efficacy of neither the lie detector or the *truth serum test* have gained that standing and scientific recognition nor demonstrated that degree of dependability to justify the courts in approving their

use in the trial of criminal cases. Therefore, the trial court was not in error in sustaining the state's objection to the defendant's tender of the results of such test to which he contends he consented." 230 P.2d at 506. (Emphasis supplied.)

▬ We remain convinced that the results of the amytal sodium or "truth serum" tests are inadmissible as evidence, inasmuch as they have not yet attained scientific acceptance as reliable and accurate means of ascertaining truth or deception. The court did not err in excluding Dr. Holbrook's testimony.

▬ Appellant also contends the trial court erred in admitting photographs of the body of the deceased taken at the scene of the homicide. The record reflects several witnesses testified as to the deceased being shot and his appearance thereafter at the scene. It is now well established that since a verbal description of the body at the scene was admissible it is not error to admit into evidence photographs thereof. See *Dugger v. State,* 543 S.W.2d 374 (Tex.Cr.App.1976); *Woodkins v. State,* 542 S.W.2d 855 (Tex.Cr. App.1976); *Sternlight v. State,* 540 S.W.2d 704 (Tex.Cr.App.1976); *Lopez v. State,* 535 S.W.2d 643 (Tex.Cr.App.1976). See also *Whitmore v. State* (Tex.Cr.App. # 52,324, 10/13/76); *Collins v. State,* 548 S.W.2d 368 (Tex.Cr.App.1976).

The photographs were properly admitted. Appellant's contention is overruled. *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972).

As to the court's charge, appellant first contends the court submitted an erroneous charge on accident by use of the qualifying phrase, "Who is in the prosecution of a lawful object by lawful means," thus wrongly restricting his defensive theory.[1]

---

1. The court submitted the issue of accident as follows:

"You are instructed that homicide is excusable when the death of a human being happens by accident or misfortune, though caused by the act of another, who is in the prosecution of a lawful object by lawful means.

"Therefore, if you find and believe from the evidence that the defendant, Darrell L. Cain, in the County of Dallas, State of Texas, on or

about the 24th day of July, 1973, did then and there kill Santos Rodriguez by shooting him with a gun, if he did, and you further find and believe from the evidence that the act of the defendant in shooting Santos Rodriguez was accidental while he, the said defendant, was in the prosecution of a lawful object by lawful means or if you have a reasonable doubt thereof then you will acquit the defendant and say by your verict, 'Not Guilty.' "

First it does not appear that appellant was entitled to a charge on accident. In *Starling v. State,* 522 S.W.2d 505 (Tex.Cr. App.1975), the defendant called the sheriff and said she accidentally shot her husband. The evidence reflected she intentionally pulled the trigger although she maintained she thought the gun was not loaded. This court held that this was a mistake of fact and not accident and that the court did not err in refusing to charge on accident. *Hamilton v. State,* 64 Tex.Cr.R. 175, 141 S.W. 966 (1911), was overruled to the extent of any conflict. Cf. *Brown v. State,* 523 S.W.2d 238 (Tex.Cr.App.1975); *Fazzino v. State,* 531 S.W.2d 818 (Tex.Cr.App.1976).

Likewise in the instant case the appellant admitted he pulled the trigger on his pistol as he held it to the head of the deceased which resulted in the death, but testified he thought he had unloaded the pistol. It is observed that the court charged on mistake of fact.

■ It is, of course, well established that an accused is entitled to a charge on every defensive issue raised by the evidence and an accused's testimony alone is sufficient to raise such a defensive theory. See *Sargent v. State,* 518 S.W.2d 807 (Tex.Cr.App.1975); *Ray v. State,* 515 S.W.2d 664 (Tex.Cr.App. 1974); *Gavia v. State,* 488 S.W.2d 420 (Tex. Cr.App.1972).

Further, Article 39, Vernon's Ann.P.C., 1925, provided:

"No act done by accident is an offense, except in certain cases specially provided for where there has been a degree of carelessness or negligence which the law regards as criminal."

■ Normally if the issue is raised the accused is entitled to the defensive charge on accident. If it can be argued the appellant was entitled to an accident charge, it cannot, however, be said he was entitled to an unencumbered defense of accident.

Article 1228, Vernon's Ann.P.C., 1925, provided:

"Homicide is excusable when the death of a human being happens by *accident* or misfortune, though caused by the act of another *who is in the prosecution of a lawful object by lawful means.*" (Emphasis supplied.)

In *Sargent v. State,* 518 S.W.2d 807, 809 (Tex.Cr.App.1975), this court wrote:

"The legislative intent is manifest; the defense of accident which will legally excuse the taking of another's life is limited to situations where the activity engaged in by the defendant is lawful. Conversely, the inescapable implication of Art. 1228 is that the homicide will not be excusable if one is in the pursuit of an unlawful activity. . . ."

■ While *Sargent* dealt with the defense of accident in Article 42, Vernon's Ann.P.C., 1925, we conclude that what was said there is also applicable here. Appellant was shown by the evidence and his own admission to have been engaged in acts in violation of the provisions of Article 1157, Vernon's Ann.P.C. (violence to induce confession). Thus, if appellant was entitled to a charge on accident, the charge given was not unduly restrictive. The contention is overruled.

In two grounds of error appellant urges the court erred in failing to charge on intent to kill and aggravated assault.

■ *Ruiz v. State,* 523 S.W.2d 691 (Tex. Cr.App.1975), has been decided adversely to appellant's contentions. There it was held that when a weapon deadly per se is used in a deadly manner and death results there is no need to give a charge on specific intent to kill or aggravated assault, even though the defendant testifies, that he did not intend to kill the victim. See Article 45, Vernon's Ann.P.C., 1925. It has long been held under the former Penal Code that a pistol is a deadly weapon per se. See, e. g., *Bell v. State,* 501 S.W.2d 137 (Tex.Cr.App. 1973); *Stills v. State,* 492 S.W.2d 478 (Tex. Cr.App.1973); *Ortiz v. State,* 490 S.W.2d 594 (Tex.Cr.App.1973); *Walker v. State,* 440 S.W.2d 653 (Tex.Cr.App.1969).

Further, it has been held that a charge on accident is inclusive of any question of intent to kill and a charge on intent to kill. See *Chevallier v. State,* 404 S.W.2d 36 (Tex.

Cr.App.1965); *Cole v. State,* 157 Tex.Cr.R. 469, 250 S.W.2d 201 (1952).

Appellant also urges that the court erred in submitting a charge concerning negligent homicide in the second degree (in performance of an unlawful act).

It appears that appellant first requested the charge then later withdrew the request, but still later excepted to the charge as a whole because the court did not charge on the issue of negligent homicide in the second degree. Since the appellant excepted to the absence of the charge the error, if any, in giving the charge was invited and could not be reversible error. See *Stiles v. State,* 520 S.W.2d 894 (Tex.Cr.App. 1975); *Boykin v. State,* 513 S.W.2d 820 (Tex.Cr.App.1974); *Hendrix v. State,* 459 S.W.2d 634 (Tex.Cr.App.1970). Further, we fail to see how the giving of the charge was calculated to deprive the appellant of any right or to deprive him of a fair trial. See Article 36.19, Vernon's Ann.C.C.P.

Appellant further contends that the court committed reversible error in failing to instruct the jury relative to Article 44, Vernon's Ann.P.C., 1925, which provided:

"One intending to commit a misdemeanor and who in the act of preparing for or executing the same shall through mistake commit a felony shall receive the lowest punishment affixed to the felony."

Under the foregoing statute an accused is actually guilty of the felony mistakenly committed. *Crawford v. State,* 511 S.W.2d 14 (Tex.Cr.App.1974); *Key v. State,* 71 Tex.Cr.R. 642, 161 S.W. 121 (1913). The only amelioration provided is that the accused shall receive the lowest punishment for the felony committed. *Key v. State,* supra.

Appellant argues that the evidence revealed that he placed a pistol against the head of the deceased to induce a confession, which was aggravated assault or some misdemeanor, and that he committed a felony by mistake from shooting what he felt was an unloaded pistol.

The record reflects that appellant requested a charge on Article 44, supra, at the guilt stage of the bifurcated trial, which was denied, but made no objection nor submitted a special requested charge at the penalty stage of the trial. The trial court charged on the murder at the guilt stage and did not submit the issue of whether it was with or without malice and the penalties involved until the punishment stage. This was in accordance with *Brazile v. State,* 497 S.W.2d 302 (Tex.Cr.App.1973).

In *Ruiz v. State,* supra, the court did not charge at the guilt stage on the definition of malice aforethought and murder without malice, though such matters were submitted at the penalty stage of the trial. There we adhered to *Brazile* and stated:

"All voluntary killings are murder, and the presence or absence of malice relates only to the punishment. Thus it would appear proper to submit the issue of malice only during the punishment stage."

See also *Hanks v. State,* 542 S.W.2d 413 (Tex.Cr.App.1976); *Armentrout v. State,* 515 S.W.2d 297 (Tex.Cr.App.1974); *Foster v. State,* 493 S.W.2d 812 (Tex.Cr.App.1973).

The provisions of Article 44, supra, relate only to punishment, and the charge thereunder should have been submitted at the penalty stage of the bifurcated trial procedure under Article 37.07, Vernon's Ann.C.C.P. Although appellant requested such a charge at the guilt stage, he failed to renew such request or object at the penalty stage. In *Mosley v. State,* 490 S.W.2d 842 (Tex.Cr.App.1973), this court held that objections to the charge at the guilt stage of the trial which are premature must be re-offered at the penalty stage in order that the court will not be "sandbagged." See and cf. *Foster v. State,* supra; *Daniels v. State,* 527 S.W.2d 549 (Tex.Cr.App.1975). Appellant waived any complaint on appeal by failing to object or offer a special requested charge at the penalty stage of the trial.

Appellant further urges that the court erred in failing to instruct the jury that the res gestae statements admitted in evidence could be considered on the issue of intent. The appellant cites no authority for

his contention. We find that the court did charge the jury, "You are further instructed as a part of the law in this case that intent may be inferred from acts done, if any, or words spoken, if any." The charge, as given, amply protected the rights of the accused in this regard and avoided any comment on the weight of the evidence as prohibited by Article 36.14, Vernon's Ann.C. C.P. Cf. *Friga v. State,* 488 S.W.2d 430 (Tex.Cr.App.1973). The contention is overruled. We further observe that in jury argument appellant's counsel referred to the court's charge and evidence of appellant's res gestae at the guilt stage of the trial.

As to jury argument, appellant complains of the prosecutor's argument at the guilt stage of the trial as being outside the record and unsupported by the evidence when the prosecutor speculated that if the deceased had not died, the confession had been coerced, and the deceased had been on trial, the appellant would have not testified that he held the pistol to the deceased's head and that he would lie to cover up his violation. The record then reflects:

"MR. BURLESON (defense counsel): We object to that. There is no evidence whatsoever that—
"MR. MULDER (prosecutor): Reasonable to deduce.
"THE COURT: Counsel, he has a right to draw his own conclusion from the testimony.
"MR. BURLESON: He didn't say that previously, that was my objection.
"THE COURT: Overrule the objection."

Thereafter, the prosecutor continued the same line of argument.

■ An objection must be made as soon as the ground of objection becomes apparent. *Ford v. State,* 500 S.W.2d 827 (Tex.Cr.App.1973); *Compton v. State,* 500 S.W.2d 131 (Tex.Cr.App.1973); *Sierra v. State,* 482 S.W.2d 259 (Tex.Cr.App.1972). Objection to the argument must come at the time of argument if error is to be preserved. *Olson v. State,* 484 S.W.2d 756 (Tex.Cr.App.1972); *Joines v. State,* 482 S.W.2d 205 (Tex.Cr.App.1972); *Ricondo v.*

*State,* 475 S.W.2d 793 (Tex.Cr.App.1971). We observe that the prosecutor argued at some length along the lines now complained of before the first objection was interposed.

■ The objection offered was, "He didn't say that previously, that was my objection." It does not appear this objection was sufficient to bring the trial court's attention to the error now complained of on appeal. See *Bouchillon v. State,* 540 S.W.2d 319 (Tex.Cr.App.1976); *Watson v. State,* 532 S.W.2d 619 (Tex.Cr.App.1976); *Williams v. State,* 531 S.W.2d 606 (Tex.Cr.App. 1976).

Under the circumstances presented, we need not pursue the question of whether the argument was also invited by the earlier defense argument that the State's theory was that the appellant, a career police officer, placed a loaded gun to the deceased's head, in order to induce a confession and to learn the name of the third person involved in the burglary, when as an officer he knew that there were three or four witnesses and that he would have to go to court.

Appellant's contention is overruled.

In another ground of error appellant again complains that the prosecutor argued outside the record and gave unsworn testimony.

The record shows that at the guilt stage of the trial the prosecutor Mulder stated:

"And I will tell you, the only thing worse than killing a handcuffed child, a 12-year-old child who is handcuffed in a squad car, who had been involved in a burglary from a Fina station, the only thing worse than that—
"MR. BURLESON (defense counsel): We object to him telling the jury something that is not in evidence and giving unsworn testimony to the jury. It's his personal opinion; we object.
"THE COURT: What part of your objection—
"MR. BURLESON: Object to him stating, 'I'm going to tell you something that's worse.' That's not based upon any evidence, it's his opinion. It's outside the record.

"MR. MULDER: He hasn't heard what I was going to say.

"THE COURT: He hasn't said anything objectionable that I know of yet, counsel.

"MR. MULDER: The only thing worse than killing a child who is handcuffed, who is involved in a burglary, is killing a child who was handcuffed who was totally blameless, and totally innocent."

No other objection was offered after the prosecutor had completed his statement.

■ First, we observe that appellant did not press the court to an adverse conclusory ruling and therefore waived error, if any. *Bailey v. State,* 532 S.W.2d 316 (Tex.Cr. App.1976); *Braxton v. State,* 528 S.W.2d 844 (Tex.Cr.App.1975); *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr.App.1975).

Further, when the prosecutor's statement was completed, no objection was made. Nothing is presented for review. *Joines v. State,* supra; *Olson v. State,* supra; *Ricondo v. State,* supra.

■ Regardless of the above, the argument appears to be a reasonable deduction from the evidence. There was testimony the deceased denied any complicity in the burglary before being shot. David Rodriguez also denied being involved and testified he and the deceased were home asleep at the time of the offense. Officer Jenkins testified that the service station was dusted for fingerprints and neither the fingerprints of the deceased nor those of David Rodriguez were found. If the argument is a reasonable deduction from the evidence, no error is shown. *Hoagland v. State,* 494 S.W.2d 186 (Tex.Cr.App.1973); *Lopez v. State,* 490 S.W.2d 565 (Tex.Cr.App.1973).

In another ground of error appellant complains that the court erred in overruling the objection to the prosecutor's use before the jury of a policeman's badge which was never identified or offered into evidence.

In his closing argument at the guilt stage of the trial, the prosecutor referred to the Roman legions and the shield which they erected when they seized new territories which bore Latin words which when translated mean, "In this sign we conquer." He then argued that from this ancient shield of Rome "evolved the badge or shield of law enforcement, a badge or shield that has been worn proudly by many, many brave men." The record then reflects:

"MR. BURLESON (defense counsel): We object to counsel demonstrating, showing something to the jury that has not been offered in evidence.

"MR. MULDER: You have all seen a policeman's badge.

"THE COURT: Overrule the objection."

The prosecutor then continued his argument that the badge or shield had come to mean, "In this sign we protect," and that many men had laid down their lives because they believed in the principle. He then argued:

". . . Darrell Cain has tarnished that badge or shield, he has cast aspersion upon it, he has tarnished that shield with the blood of Santos Rodriguez, for to Darrell Cain this symbolizes 'In this sign I murder'."

There were no objections to this line of argument.

After the jury retired to deliberate at the guilt stage of the trial, appellant's counsel tendered an offer of proof reiterating his objection and its overruling and further stating that the prosecutor displayed a police badge to the jury on four separate occasions during the argument in such proximity that they could see the badge. See Article 40.09, § 6(d)(1), Vernon's Ann.C. C.P.

■ The State urges that if the proffer of proof is taken as true, then the police badge was displayed three times without objection for the record only reflects one objection. The State then argues that if the badge were improperly before the jury its earlier or subsequent display without objection would render harmless the display to which objection was made, citing *Wood v. State,* 511 S.W.2d 37, 47 (Tex.Cr.App. 1974); *Vela v. State,* 516 S.W.2d 176 (Tex. Cr.App.1974). It is well established that improper admission of evidence does not constitute reversible error if the same facts

were shown by other facts to which there was no objection. *Watson v. State,* 532 S.W.2d 619 (Tex.Cr.App.1976); *Hayles v. State,* 507 S.W.2d 213 (Tex.Cr.App.1974). It would appear that the error, if any, was waived by failure to object to the other three displays of the badge. Further, while the display of the badge which was not introduced into evidence should not have been made, it is difficult to see how the display would be reversible in light of the fact that evidence showed appellant wore a police uniform and badge on the night of the homicide and it is common knowledge that uniformed officers wear a badge as indicated by counsel's statement to the prosecutor at the time of his objection. Undoubtedly the badge would have been admissible in evidence had it been offered, *Washburn v. State,* 167 Tex.Cr.R. 125, 318 S.W.2d 627 (1958), cert. den. 359 U.S. 965, 79 S.Ct. 876, 3 L.Ed.2d 834, and we cannot conclude under the circumstances described above that the improper display presents reversible error.

Appellant also advances as error the prosecutor's argument at the penalty stage of the trial in which he contends the prosecutor attempted to bring community pressure to bear on the jury in assessing punishment.

In seeking probation from the jury, appellant's counsel argued that appellant had never been convicted of any offense, that he would never be a police officer again, and that events such as in the instant case would never recur.

■ The prosecutor, opposing probation, made the following argument of which appellant complains:

". . . But something else, too; there are some things in this world that are totally inexcusable, totally without excuse, and what Darrell Cain did to Santos Rodriguez is without justification and it's totally without excuse.

"Now, what would you have us do, really? I mean, what are we to do, are we to look at the defendant over here and focus on him and his look of designed innocence and blind ourselves to the corpse of the boy he killed? If so, who is

to answer for the death of Santos Rodriguez? Who? Are we to hear his cries and close our ears to the sobbing, mourning tears of those people that mourn Santos Rodriguez? If so, who is to answer for the death of Santos Rodriguez? Are we to do what Phil Burleson says, are we to wring our hands and shrug our shoulders and nod our heads, say oh, it's a pity, but let's give him probation. If so, then who is to answer for the death of Santos Rodriguez? You? Me? The community at large? I refuse—

"MR. BURLESON: We object to that, calling the community pressures upon this jury; we object and ask to instruct them not to consider it.

"MR. SPARLING: Your Honor, I have a right to argue law enforcement.

"THE COURT: Overrule the objection."

An examination of the argument in the context in which it was made shows there was no appeal to community conscience, demand, desire or expectation unlike the cases cited by appellant. The prosecutor simply argued that the appellant bore the sole responsibility for the death of the deceased. The argument was for law enforcement and was proper. "Counsel for the State has the right, if not the duty, to make a proper argument for law enforcement. The argument made did not refer to the wishes of the community nor did it constitute unsworn testimony." *Phillips v. State,* 450 S.W.2d 650 (Tex.Cr.App.1970). See also *Crawford v. State,* 511 S.W.2d 14 (Tex.Cr.App.1974); *Brown v. State,* 508 S.W.2d 91 (Tex.Cr.App.1974); *Bothwell v. State,* 500 S.W.2d 128 (Tex.Cr.App.1973); *Perbetsky v. State,* 429 S.W.2d 471 (Tex.Cr.App.1968).

Finding no reversible error, the judgment is affirmed.