LeRoy L. REED, Appellant,

v.

The STATE of Texas, Appellee.

No. 63937.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 26, 1983.

Mark A. Troy, Jr., Arch C. McColl, III, Dallas, for appellant.

Henry Wade, Dist. Atty., Jeffrey Keck, Ron Poole and Lee Hight, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. Trial was before the court on a plea of not guilty. Punishment was assessed at nine years.

Appellant was convicted of murdering his wife, Beverly Gail Reed, on February 19, 1978, by shooting her with a pistol.

In his first ground of error, appellant complains that his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution were violated when the trial court overruled his motion for court-appointed experts and investigators in excess of the statutory limit of $500.00. Art. 26.05, Sec. 1(d), V.A.C.C.P.

According to appellant, the $500.00 limit set by the Legislature and enforced by the trial court deprived him of effective assistance of counsel and penalized him because he was too poor to afford his own experts and investigators.

Appellant filed a pre-trial motion for court-appointed experts. In paragraph four of the motion appellant stated:

"Moreover, Petitioner objects to a $500.00 limit being placed on investigation and expert testimony expenses as a denial of equal protection, and in light of the seriousness of the charges, would ask this Court to construe such limit as being $500.00 *for each* investigator or expert witness necessary in the preparation of the investigation and presentation of the defensive evidence."

Appellant also filed a motion for court-appointed investigator which contained identical language. The trial court granted both motions, "but limited to [the] statutory limit of $500."

Other than asserting his general constitutional right to fees in excess of $500.00, appellant did not state, at the pre-trial, trial, or punishment stages, how a denial of such excess fees would harm him in this case.

It is well settled that an appellant complaining of improper action under Art. 26.05, supra, must show, by way of evidence in the record, how he was harmed or injured by such action. *Brasfield v. State,* Tex.Cr.App., 600 S.W.2d 288; *Freeman v. State,* Tex.Cr.App., 556 S.W.2d 287; *Henriksen v. State,* Tex.Cr.App., 500 S.W.2d 491; *Cherry v. State,* Tex.Cr.App., 488 S.W.2d 744.

The only evidence offered by appellant to show harm came at the motion for new trial through the testimony of Dr. John Holbrook. He testified that his fee for preparing a full psychological profile on a subject and testifying as to future dangerousness was $400.00. This was the first time that appellant had made known to the court that he felt the testimony of Dr. Holbrook was necessary. An accused cannot wait until the verdict is in and with the benefit of hindsight complain how he would have been helped by the aid of an expert. Further, any testimony relative to future dangerousness of an accused is clearly not admissible at the guilt stage and does not come within the ambit of permissible testimony at the punishment stage of a non-capital case.[1]

Appellant having failed to show harm, we find it unnecessary to respond to

---

1. Art. 37.07(3)(a), V.A.C.C.P., sets forth what evidence is admissible at the punishment stage in a non-capital case:

"Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged."

any claimed deprivation of constitutional rights.

In his second ground of error, appellant contends that the trial court erred in excluding Dr. John Holbrook's testimony as to the results of a Brevital examination of appellant.

Holbrook testified that Brevital is in the "same category" as Pentathol and Amytol. Holbrook preferred Brevital because it has fewer side effects and acts rapidly.

Brevital reduces the level of consciousness of the subject putting him in a near-hypnotic state. Questions are then asked of him and he is often able to recall things he had forgotten in his normal state.

In *Cain v. State*, Tex.Cr.App., 549 S.W.2d 707, following the lead of most jurisdictions, we held the results of amytol sodium or "truth serum" tests inadmissible as evidence, since they had not yet attained scientific acceptance as reliable and accurate means of ascertaining truth or deception. Appellant points to no evidence that would warrant our overturning *Cain*. The drug Brevital according to the doctor who performed the tests in this case and in *Cain* is essentially a substitute for Amytol which produces an almost identical effect on the human subject. Both drugs are in the "same category." Appellant's second ground of error is overruled.

Finally, appellant complains that the trial court's lack of power to assess unadjudicated probation in a case such as his violated his rights under the United States and Texas Constitutions.

Appellant argues that the statutory scheme under which some defendants may receive deferred adjudication and others may or may not be eligible for probation is violative of the Fifth Amendment's due process clause.

This is so, because the statutory scheme "has no other purpose or effect than to penalize assertion of the right not to plead guilty." According to appellant:

"The statutes, Art. 42.12, Sec. 3d(a) and Art. 42.12, Sec. 3f(a), provide for the possibility of *no adjudication of guilt* by the Court upon entry of a guilty plea, but, on the other hand, for a Defendant who pleads not guilty and is found guilty by the Court, the stigma of a judgment of guilt and at a *minimum,* penitentiary time follows . . .
"The statutory scheme thus provides a significantly more severe standard of punishment for the defendant who exercises his Fifth and Fourteenth Amendment rights under the Constitution to plead not guilty . . . "

In the instant case, the trial court found that appellant exhibited a firearm during commission of the charged offenses. Appellant avers that:

"The Constitutional problem with the statutory scheme . . . is that it creates the anamolous result that the Defendant/Appellant cannot receive *regular* probation from a court because a pistol was used, but the Defendant/Appellant can receive from the Court unadjudicated probation, a much *less* onerous disposition of the case, despite the use of a deadly weapon. In order, however, to be eligible for unadjudicated probation, the Defendant must plead *guilty* or nolo contendere . . . "

Secs. 3d(a) and 3f(a) provide as follows: "Sec. 3d. (a) When in its opinion the best interest of society and the defendant will be served, the court may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on probation for a period as the court may prescribe, not to exceed 10 years. The court may impose a fine applicable to the offense and require any reasonable terms and conditions of probation, including any of the conditions enumerated in Sections 6 and 6a of this Article. However, upon written motion of the defendant requesting final adjudication filed within 30 days after entering such plea and the deferment of adjudication, the court shall proceed to final adjudication as in all other cases.

" . . .

"Sec. 3f. (a) The provisions of Sections 3 and 3c of this Article do not apply:

(1) to a defendant adjudged guilty of an offense defined by the following sections of the Penal Code:

"(A) Section 19.03 (Capital murder);

"(B) Section 20.04 (Aggravated kidnapping);

"(C) Section 21.03 (Aggravated rape);

"(D) Section 21.05 (Aggravated sexual abuse);

"(E) Section 29.03 (Aggravated robbery); or

"(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment."

Appellant is incorrect in his assertion that Art. 42.12, Sec. 3d(a), supra, "has no other purpose or effect than to penalize assertion of the right not to plead guilty."

■ The purpose of the statute is to allow the trial court the flexibility to defer adjudication for deserving defendants, "when in its opinion the best interest of society and the defendant will be served."

■ The power to defer adjudication rests solely within the discretion of the trial court. The availability of the option is limited to defendants who plead guilty or nolo contendere. This reflects both a desire to conserve scarce judicial and prosecutorial resources and the practical knowledge that Sec. 3d(a), supra, will very often be utilized as part of a plea-bargain arrangement.

■ That one side effect of Sec. 3d(a), supra, will be the occasional encouragement of guilty pleas does not render the statute unconstitutional under the Fifth and Fourteenth Amendments. *Brady v. U.S.*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747.

As the Supreme Court made clear in *Brady v. U.S.*, supra, at 750–753, 90 S.Ct. at 1470:

"The State to some degree encourages pleas of guilty at every important step in the criminal process. For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family. All these pleas of guilty are valid in spite of the State's responsibility for some of the factors motivating the pleas; the pleas are no more improperly compelled than is the decision by a defendant at the close of the State's evidence at trial that he must take the stand or face certain conviction.

" . . .

"Insofar as the voluntariness of his plea is concerned, there is little to differentiate Brady from (1) the defendant, in a jurisdiction where the judge and jury have the same range of sentencing power, who pleads guilty because his lawyer advises him that the judge will very probably be more lenient than the jury; (2) the defendant, in a jurisdiction where the judge alone has sentencing power, who is advised by counsel that the judge is normally more lenient with defendants who plead guilty than with those who go to trial; (3) the defendant who is permitted by prosecutor and judge to plead guilty to a lesser offense included in the offense charged; and (4) the defendant who pleads guilty to certain counts with the understanding that other charges will be dropped. In each of these situations, as in Brady's case, the defendant might nev-

er plead guilty absent the possibility or certainty that the plea will result in a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty. We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.

"The issue we deal with is inherent in the criminal law and its administration because guilty pleas are not constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law. For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious-his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages-the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

"Of course, that the prevalence of guilty pleas is explainable does not necessarily validate those pleas or the system which produces them. But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary." (Footnotes omitted.)

██  We also note that the difference between the treatment a defendant in appellant's position receives if he goes to trial on a plea of not guilty on the one hand or attempts to come within the provisions of Sec. 3d(a), supra, on the other is not as substantial as appellant would have us believe.

To begin with, as stated earlier, deferred adjudication is entirely within the trial court's discretion. No defendant, absent a plea bargain, can be assured of receiving it. Second, a defendant given deferred adjudication who violates the conditions of his probation can be sentenced to the maximum term provided for the offense to which he pled guilty. Art. 42.12, Sec. 8(a), V.A.C. C.P. A defendant who violates the conditions of regular probation, however, will never receive more than a ten year sentence. Secs. 3 and 8(a), supra.

Additionally, a defendant whose regular probation is revoked may appeal the revocation. Art. 42.12, Sec. 8(b). A defendant given deferred adjudication may not appeal the trial court's determination of whether it will proceed with an adjudication of guilt on the original charge. Sec. 3d(b), supra.

For all of the above reasons we reject appellant's Fifth Amendment challenge to the statutory scheme in question.

██  Appellant also argues that this statutory scheme constitutes a violation of the Separation of Powers doctrine at the state level in that it is an arbitrary usurpation of the power of the judicial branch to assess probation where justice so requires, even though the defendant has not pled guilty and a deadly weapon was used.

As noted in *McNew v. State,* Tex.Cr.App., 608 S.W.2d 166, the Legislature has the power under Art. III, Sec. 1 of the State Constitution to create the deferred adjudication statute. Under Art. IV, Sec. 11–A of the State Constitution, certain courts in Texas have the power to grant regular probation following conviction, "under such conditions as the Legislature may prescribe." We fail to see how the Legislature's provision for such regular probation violates Art. IV, Sec. 11–A.

The judgment is affirmed.

TEAGUE, J., not participating.

CLINTON, Judge, dissenting.

If I rightly understand the majority opinion, it perceives appellant's final complaint to be that the statutory scheme for probation violates the "due process clause" of the Fifth Amendment. That clause, of course, also provides equal protection guarantees, as does the Fourteenth. Yet, in disposing of his contention the majority sets out lengthy excerpts from *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). But *Brady v. United States,* supra, is not a decision about due process or equal protection.

That part of the Fifth Amendment implicated in *Brady* is the privilege from being compelled to enter a guilty plea, *id.,* U.S. at 748, 90 S.Ct. at 1468–1469.[1] Specifically the Supreme Court pointed out:

"Brady's claim is of a different sort: that it violates the Fifth Amendment to influence or encourage a *guilty plea* by opportunity or promise of leniency and that a *guilty plea* is coerced and invalid if influenced by the fear of a possibly higher penalty for the crime charged if a convic-

tion is obtained after the state is put to its proof." *Id.* 397 U.S. at 750–751, 90 S.Ct. at 1470.[2]

Indeed, the statement I have just quoted is in a paragraph of the *Brady* opinion that is ellipsised in the excerpt contained in the majority opinion. Thus, Brady was not making a due process claim at all, and the Supreme Court did not decide one.

As I read what the majority opinion quotes from his brief, appellant is correctly pointing out that the "statutory scheme" produces more severe punishment for the accused who exercises his constitutional right "to plead *not* guilty" and insists upon putting the State to its proof in a trial. The contention seems somewhat along the lines of the rationale of *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).[3]

So it does not answer the claim appellant does make to say that § 3d(a) is not rendered unconstitutional by its "occasional encouragement of guilty pleas."[4] That the section may be rationally related to a legitimate State purpose, as the majority seems set on demonstrating, is not to decide that the whole statutory scheme is constitutionally permissible.

Because the majority does not address the purpose and effect of the statutory scheme to find a legitimate one, I respectfully dissent.

MILLER, J., joins.

TEAGUE, J., not participating.

---

1. See *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) and *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

2. All emphasis is mine unless otherwise indicated.

3. "The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty.... If the provision had no other purpose or effect

than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional." *Id.,* 390 U.S. at 581, 88 S.Ct. at 1216.

4. As an aside, I note that in 1981 all district courts in Texas disposed of 82,731 criminal cases and in 8,818 instances placed the accused on deferred adjudication. Texas Judicial System Annual Report 118, 120.