In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00116-CR
______________________________


JARMAR DALERENTE NEWSOME, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31307-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Eyewitnesses identified Jarmar Dalerente Newsome as the man who robbed the Golden Inn
Hotel in Longview, Texas, in late 2003. They testified that a tall, slender black man—who wore a
green hooded sweatshirt with a headband pulled across his face at nose level and who drove a
burgundy or maroon Cadillac with shiny, fancy wheels—walked into the hotel's office, pointed a
handgun at two female employees, threatened them, compelled them to open the safe and give him
all the cash, seized the cash and a wallet, and fled through the office's back door. Other witnesses
testified that Newsome was elsewhere at the time of the robbery and that there were similar cars and
similar men in the neighborhood.
            Appealing from his aggravated robbery conviction and his sentence of twenty-two years'
imprisonment, Newsome alleges seven points of error. We affirm the trial court's judgment, because
we hold (1) the evidence is legally sufficient, (2) the evidence is factually sufficient, (3) the juror
challenged by Newsome was not disqualified, (4) a witness' testimony that Newsome "robs people"
did not mandate a mistrial, and (5) requiring Newsome to give a voice exemplar was not error.
(1) The Evidence Is Legally Sufficient
            In separate points, Newsome alleges the evidence was legally insufficient under the
applicable state standard and also under the applicable federal standard. In our review of the legal
sufficiency of the evidence, we employ the standards set forth in Jackson v. Virginia, 443 U.S. 307,
319 (1979). This calls on the court to view the relevant evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the essential elements of
the  crime  beyond  a  reasonable  doubt.  Johnson  v.  State,  23  S.W.3d  1,  7  (Tex. Crim. App.
2000). In our review, we must evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.
Crim. App. 1999). As the standard of review is the same under federal and state law, we will address
Newsome's first two points together.
            The jury was presented with two eyewitnesses, Barbara Williams and Elizabeth Delgado,
both of whom testified Newsome threatened them at gunpoint and demanded the hotel's money. 
Williams testified that Newsome also took her wallet. Williams and Delgado identified the green
hooded sweatshirt and headband, found in Newsome's closet, as those worn by the robber. The
pistol found in Newsome's closet, said the witnesses, was the same or looked like the pistol
brandished by the robber. Williams identified Newsome's voice as that she heard threatening to kill
Delgado during the robbery. Newsome was also identified from a photograph in the hotel's records. 
Viewing this evidence in the light most favorable to the jury's verdict, we find the evidence is legally
sufficient. We overrule Newsome's first two points of error. 
(2) The Evidence Is Factually Sufficient

            In points three and four, Newsome contends the evidence was factually insufficient, under
the state and federal standards, respectively, to support his conviction. When reviewing a challenge
to the factual sufficiency of the evidence to support the conviction, we are required to determine
whether, considering all the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). 
There are two ways in which we may find the evidence to be factually insufficient. Id. First, if the
evidence supporting the verdict, considered alone, is too weak to support the jury's finding of guilt
beyond a reasonable doubt, then we must find the evidence insufficient. Id. Second, if when we
weigh the evidence supporting and contravening the conviction we conclude that the contrary
evidence is strong enough that the State could not have met its burden of proof, we must find the
evidence insufficient. Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the
evidence is factually insufficient, then we must reverse the judgment and remand for a new trial. 
Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
            The evidence summarized above, supporting the verdict and viewed alone, is sufficient to
support the jury's verdict. For Zuniga's second prong of analysis, we consider any evidence
contravening Newsome's conviction.
            At trial Newsome presented a defense based on alibi. His mother testified she telephoned
Newsome at 10:15 the morning of the robbery to wake him for church. She added that at least two
other men in the neighborhood bore striking resemblances to Newsome. His neighbor, Ouhuineshian
Christian, testified she spoke to Newsome at 9:20 and 10:20 the morning of the robbery, during
which time Newsome was watching Christian's two young children. Newsome's friend Lakendric
Miller, who owned a maroon Cadillac with fancy chrome wheels, testified that there was another
person named Shep in the area with an identical car and that State's witness Kenetria Benton did not
like Newsome. Newsome advanced a theory that Benton disliked him so much she would frame him
for the robbery: an angry, profanity-laced letter Benton sent to Newsome while he was in jail was
read to the jury and introduced into evidence. The jury, however, was entitled to view this letter in
whatever way it determined appropriate and to believe or disbelieve the alibi evidence.
            The evidence is factually sufficient.
            Newsome does not direct us to any authority differentiating a federal factual sufficiency
standard from that articulated by the Texas Court of Criminal Appeals. There appears to be no
substantively different federal standard. See Johnson, 23 S.W.3d at 8 n.8.



(3) The Juror Challenged by Newsome Was Not Disqualified

            Newsome claims the trial court erred in denying Newsome's request for a mistrial, lodged
when one of the jurors claimed to be related to one of the State's punishment witnesses. Over the
lunch break on the first day of the trial on the merits, one of the jurors sent a note to the trial court,
saying the juror knew some of the people "in chairs," which we take to refer to people having
significant roles at trial. The juror said she saw five persons whom she recognized. Newsome's trial
counsel questioned the juror about Bobby Bell, a convicted felon who later testified for the State at
the punishment phase. The juror testified she did not know Bell, but knew of him. Bell had fathered
a child with the juror's great-niece, Amanda Daniels. 
            At trial, Newsome asked for a mistrial, citing the juror's bias and relationship to a witness. 
Newsome's counsel said he did not "know whether it's for or against my client. I do know the facts
are she is related, I think she's related, I think it meets the definition, to a witness in this case." 
            Newsome complains now only that the juror and witness were related within the third degree
of consanguinity, and therefore the trial court should have excused the juror or granted Newsome
a mistrial by reason of Article 35.16 of the Texas Code of Criminal Procedure. That statute in
relevant part allows a defendant to challenge for cause a juror who "is related within the third degree
of consanguinity or affinity to the person injured by the commission of the offense, or to any
prosecutor in the case . . . ." Tex. Code Crim. Proc. Ann. art 35.16(c)(1) (Vernon Supp.
2004–2005).
            Article 35.16 (c)(1) does not apply here. At most, the juror had some relation to witness Bell:
Bell fathered a child with the juror's great-niece. There is nothing to indicate the juror was related
to a victim of Newsome or to any prosecutor on the case. We overrule this point of error.
(4) A Witness' Testimony That Newsome "Robs People" Did Not Mandate a Mistrial
            In his sixth point of error, Newsome complains of a statement by State's witness Benton. 
Benton was the cleaning lady on duty at the hotel the day of the robbery. Benton testified that,
earlier in the day, she had seen a car belonging to a local man, Lakendric "Peewee" Miller. Miller's
car was a distinctive maroon Cadillac. Benton said that, as soon as she received the call from the
hotel office about the robbery, she thought of the car, then of Newsome. When asked why she
thought of Newsome, Benton testified, "Because I know Jarmar. And Jarmar, he robs people. I
know he robs people. And I know he has robbed people - -. " Newsome's counsel objected, the jury
was excused, and Newsome's counsel moved for a mistrial. Benton did not mention a specific
occurrence of Newsome having committed other robberies. The trial court overruled Newsome's
motion for a mistrial but instructed the jury to disregard Benton's volunteered comments that
Newsome "robs people."
            An instruction to disregard the improper evidence of an extraneous offense normally cures
error, except in extreme cases where it appears that the evidence is clearly calculated to inflame the
minds of the jury and is of such a character as to suggest the impossibility of withdrawing the
impression produced on the jurors' minds. Livingston v. State, 739 S.W. 2d 311 (Tex. Crim. App.
1987); Carter v. State, 614 S.W.2d 821 (Tex. Crim. App. 1981). Mistrial is an extreme remedy
which is appropriate only when the objectionable event is so emotionally inflammatory that a
curative instruction is not likely to prevent the jury from being unfairly prejudiced against the
defendant. See Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). As stated above,
testimony referring to extraneous offenses can be rendered harmless by an instruction to disregard,
unless it is so clearly calculated to inflame the minds of the jury and is of such a nature as to suggest
the impossibility of withdrawing the impression produced. Kemp v. State, 846 S.W.2d 289, 308
(Tex. Crim. App. 1992); Gardner v. State, 730 S.W.2d 675, 696–97 (Tex. Crim. App. 1987); Bryant
v. State, 25 S.W.3d 924, 926 (Tex. App.—Austin 2000, pet. ref'd). 
            Kemp involved a somewhat similar situation. There, a witness for the State mentioned that
Kemp had previously been incarcerated in the penitentiary. Kemp, 846 S.W.2d at 308. The Texas
Court of Criminal Appeals there found that the statement was not of such an inflammatory nature
that it could not be cured with an instruction from the trial court to disregard. Id. 
            We find the uninvited and unembellished reference to alleged extraneous conduct by
Newsome was not so inflammatory as to undermine the efficacy of a trial court's instruction to
disregard. Id. Because any harm arising from the statement could have been cured by instruction,
we conclude the trial court did not abuse its discretion by refusing to grant a mistrial. We also note
that, even if denying a mistrial was error, there was no harm from the statement, given the
considerable evidence of Newsome's guilt in this case. We overrule this point of error.
(5) Requiring Newsome To Give a Voice Exemplar Was Not Error
            Newsome's final point of error addresses the trial court's order that Newsome read a
statement one of the victims claimed the robber made during the robbery. At trial, the State asked
that Newsome be required to stand and "speak to the witness," Barbara Williams, one of the robbery
victims. After argument by counsel and researching caselaw, the trial court found that the defendant
did not have "Fifth Amendment protection for purposes of identification for speaking." The State
asked Newsome to read the statement, "Bitch, do you think I'm playing? If you don't open[,] I, I'm
going to shoot her," which Williams said was what the robber had said to her during the crime. The
trial court stated that having the defendant use the words "bitch" and "shoot" would be overly
prejudicial, and required Newsome to simply say, "Do you think I'm playing?" Newsome repeated
the phrase, and Williams identified his voice as that of the robber.
            Newsome complains that requiring him to make the above statement in open court amounted
to requiring him to make a testimonial statement and thereby violated his rights under the Fifth and
Fourteenth Amendments to the United States Constitution. But Texas courts have long held that
requiring defendants to say certain words for identification purposes does not fall within the purview
of the protection against self-incrimination, in either the Texas or United States Constitutions. See
McInturf v. State, 544 S.W.2d 417, 420 (Tex. Crim. App. 1976). As with handwriting or blood
samples and physical features, the voice is an identifying characteristic of the accused which falls
outside the scope of the constitutional privilege. Moulton v. State, 486 S.W.2d 334, 337 (Tex. Crim.
App. 1971). More recently, the Texas Court of Criminal Appeals has cited the United States
Supreme Court's position on voice exemplars:
[C]ompelling [the defendant] to speak within hearing distance of the witnesses, even
to utter words purportedly uttered by the robber, was not compulsion to utter
statements of a "testimonial" nature; he was required to use his voice as an
identifying physical characteristic, not to speak his guilt.

Williams v. State, 116 S.W.3d 788, 791–92 (Tex. Crim. App. 2003) (quoting United States v. Wade,
388 U.S. 218, 222–23 (1967)). We overrule Newsome's seventh point of error.
 
            We affirm the judgment.

 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 3, 2005
Date Decided:             July 8, 2005

Do Not Publish



vacy. Villarreal, 935 S.W.2d at 138. To carry this burden, the accused must normally prove: 
(a) that by his conduct, he exhibited an actual, subjective expectation of privacy, i.e., a genuine
intention to preserve something as private; and (b) that circumstances existed under which society
was prepared to recognize his subjective expectation as objectively reasonable. Id. (citing Smith v.
Maryland, 442 U.S. 735, 740 (1979)). 

 A defendant has standing to challenge the search of an automobile he or she does not own
if he or she has permission from the owner to drive the vehicle, or if he or she has permission from
some other person authorized to give such permission, or if he or she otherwise has a legal right to
use and control the vehicle. Nite v. State, 882 S.W.2d 587, 590-91 (Tex. App.-Houston [1st Dist.]
1994, no pet.) (defendant had standing to challenge search of the car registered to his wife in part
because of community property laws); Stine v. State, 787 S.W.2d 82, 85 (Tex. App.-Waco 1990, pet.
ref'd) (defendant who had authority to test drive vehicles left for repairs at a car repair shop had
standing to challenge the search of the car which he used to commit murder). 

 A person, however, driving a rental vehicle does not have standing to challenge a search of
the vehicle if driving the vehicle is prohibited by the vehicle rental agreement, even if he or she has
the permission of the person who rented the vehicle. See United States v. Boruff, 909 F.2d 111, 117
(5th Cir. 1990); Rovnak v. State, 990 S.W.2d 863, 871 (Tex. App.-Texarkana 1999, pet. ref'd)
(following Boruff). Contra United States v. Lee, 898 F.2d 1034, 1038 (5th Cir. 1990) (driver of the
rental truck, who had permission from the lessee but not the lessor, had standing to challenge the
search). Here, Maysonet was driving a rental vehicle, and he was not listed as a driver on the rental
agreement. Further, no one in the vehicle was a registered driver. No evidence was introduced to
show that Maysonet had any interest in or right to use the vehicle, nor is there even a bare assertion
that he had such a right. 

 Therefore, Maysonet failed to demonstrate he had a legitimate expectation of privacy in the
rental vehicle. Although Maysonet had standing to challenge the detention, which was
constitutionally reasonable, he lacked standing to challenge the search of the rental vehicle. For
these reasons, we overrule Maysonet's second point of error. 



 The judgment is affirmed.



 Ben Z. Grant

 Justice


Date Submitted: October 1, 2002

Date Decided: October 16, 2002


Publish
1. Although Frye was never explicitly adopted in Texas, the Texas Court of Criminal Appeals
used the "general acceptance" test on several occasions to review lower court decisions. See Zani
v. State, 758 S.W.2d 233 (Tex. Crim. App. 1988); Reed v. State, 644 S.W.2d 479 (Tex. Crim. App.
1983); Cain v. State, 549 S.W.2d 707 (Tex. Crim. App. 1977); Romero v. State, 493 S.W.2d 206
(Tex. Crim. App. 1973).
2. The Texas Court of Criminal Appeals in Kelly discussed several "factors" available to courts
to determine reliability of scientific evidence. They include, but are not limited to: 1) acceptance
by the relevant scientific community, 2) qualifications of the expert, 3) literature concerning the
technique, 4) the potential rate of error of the technique, 5) the availability of other experts to test
and evaluate the technique, 6) the clarity with which the underlying theory or technique can be
explained to the court, and 7) the experience and skill of the person applying the technique. Kelly,
824 S.W.2d at 573.
3. Other factors the Court cited were: 1) whether the theory or technique can be or has been
tested, 2) whether the theory or technique has been subjected to peer review or publication, and 3)
the known or potential rate of error.