Opinion filed July 16, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed July 16,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00249-CR

                                                       ________

 

                              JUAN
MANUEL ALBARADO, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 104th District Court

 

                                                          Taylor
County, Texas

 

                                                  Trial
Court Cause No. 15959B

 



 

                                              M E M O R A N D U M   O P I N I O N

 

The
jury found that sixteen-year-old Juan Manuel Albarado murdered
twenty-four-year-old Joe Louis Carrion and assessed punishment at confinement
for thirty years.  We affirm.[1]

Two
different groups of people were a part of the backdrop that led up to this
homicide.








On
the night before the murder, Albarado was smoking marihuana at Roxanne Zepeda=s house.  Later, he joined
a group of people who had gathered at Melissa Castillo=s house.  The people were drinking and doing
illegal drugs.  Around 9:00 p.m. that evening, Albarado and Michael Santana
made the decision to borrow a gun from a friend.  Albarado testified that he
and some of his friends had been the targets of a drive-by shooting earlier in
the year; they wanted the gun for protection.  They also had received threats. 
However, these friends and the prior event were not connected to the present
offense.  Albarado and Santana left, picked up a pistol-gripped shotgun, and
returned to the others at Castillo=s
house.  They loaded the gun with 00 buckshot and smoked some more marihuana. 
Castillo did not want the shotgun in the house, and she asked that it be taken
outside.  Albarado took the loaded shotgun outside and laid it on a rock.  He
continued to drink and use drugs.

Later,
sometime after midnight, some people drove by Castillo=s house.  Someone in the car was yelling for
John Lopez, wanting him to come out and fight.  In response, some of Albarado=s group yelled back and
also threw beer bottles at the car.  The driver quickly drove away but returned
and drove the vehicle around the block a number of times, eventually leaving
the area.








Ultimately,
the victim and others went to Castillo=s
house, and a fight started between the two groups.  The victim and Albarado, as
well as others, were involved in the fight and were on opposite sides of the
conflict.  During the fight, Santana got the loaded shotgun from the rock and
handed it to Albarado.  Albarado fired the shotgun in the air, and people began
to Ascatter.@  He fired some shots into
the grille on a vehicle that had been driven there.  He continued to fire the shotgun
in the direction of the people with whom his friends had been fighting but who
were now fleeing.  The victim was one of the ones who was fleeing as Albarado
kept going toward the group, leaving a trail of empty shell casings as he
went.  The victim did not get away.  Albarado shot him in the back.  Forensic
evidence showed that there were six different shotgun pellet wound sites on the
victim=s body.  One of
those six pellets penetrated his heart, and the victim later died from it.      Albarado
challenges his conviction in six points.  In his first point, he basically
alleges that the trial court erred when it instructed the jury regarding the
mens rea applicable to these facts and this particular charge of murder.  The
grand jury returned a two-paragraph murder indictment against Albarado in which
it charged, in the first paragraph, under Tex.
Penal Code Ann. ' 19.02(b)(1)
(Vernon 2003), that he intentionally and knowingly caused the victim=s death by shooting him in
the back and head with a deadly weapon.  In the second paragraph, the grand
jury, under Tex. Penal Code Ann. ' 19.02(b)(2) (Vernon 2003),
charged that Albarado Adid
then and there intentionally and knowingly, with intent to cause serious bodily
injury . . . , commit an act clearly dangerous to human life, . . . thereby
causing@ the victim=s death.  The jury found
Albarado guilty of the offense charged in Paragraph Two.

Section
19.02(b)(1) and (2) provides that a person commits an offense if he:

(1)
intentionally or knowingly causes the death of an individual;

 

(2)
intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of an individual.

 

In
connection with the charge in Paragraph Two of the indictment, the trial court
charged the jury: 

                      PARAGRAPH
2 OF THE INDICTMENT

A
person commits the offense of Murder if he intends to cause serious bodily
injury and commits an act clearly dangerous to human life that causes the death
of an individual.

 

With
regard to PARAGRAPH 2 of the indictment, Aintent
to cause serious bodily injury,@
a person acts intentionally, or with intent, with respect to a result of his
conduct when it is his conscious objective to cause the result.

 

With
regard to PARAGRAPH 2 of the indictment, Acommitting
an act clearly dangerous to human life,@
a person acts intentionally, or with intent, when it is his conscious objective
to engage in the conduct.

 

Now,
if you find from the evidence beyond a reasonable doubt that on or about May
14, 2005, in Taylor County, Texas, the defendant, JUAN MANUEL ALBARADO, did
then and there, with intent to cause serious bodily injury to an individual,
namely Joe Louis Carrion, commit an act clearly dangerous to human life, to
wit: shooting the said Joe Louis Carrion in the back or head with a firearm,
thereby causing the death of the said Joe Louis Carrion, then you will find the
defendant, JUAN MANUEL ALBARADO, guilty of the offense of Murder as alleged in
Paragraph Two of the indictment.

 








In
order to prove murder under Section 19.02(b)(2) as charged in Paragraph Two in
this case, the State had to prove that Albarado intended to cause serious
bodily injury to the victim, that he committed an act objectively clearly
dangerous to human life, and that the act caused the victim=s death.  Lugo-Lugo v.
State, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983).[2] 
The language Acommits
an act clearly dangerous to human life,@
as used in Section 19.02(b)(2), does not require proof of a culpable mental
state.  The focus is on Athe
mental state of the individual on the particular result and not on the conduct
that causes death.@ Lugo-Lugo,
650 S.W.2d at 81-82.

Murder
is a Aresult of
conduct@ type of
offense.  The culpable mental state relates to the result of the conduct, not
the conduct itself.  Roberts v. State, 273 S.W.3d 322, 328-29 (Tex.
Crim. App. 2008); Lugo-Lugo, 650 S.W.2d at 82; see also Lomax v.
State, 233 S.W.3d 302, 307 n.16 (Tex. Crim. App. 2007).

In
Fuller v. State, 819 S.W.2d 254, 256 (Tex. App.CAustin 1991, pet. ref=d), the court held that it was error to
include A>engage in conduct= language in the
definitional portion of a jury charge@
when the offense is a result-of-conduct offense.  Likewise, in Wallace v.
State, 763 S.W.2d 628, 629 (Tex. App.CSan
Antonio 1989, no pet.), the court held that a jury charge in which the trial
court defines A>intentionally= and >knowingly= as they relate to the
nature of the conduct as well as the result of the conduct is error.@  Our Court of Criminal
Appeals has quoted those statements with approval.  Cook v. State, 884
S.W.2d 485, 490 (Tex. Crim. App. 1994).

The
trial court here, by its definitions, generally charged the jury on intent in
relation to the commission of the act clearly dangerous to human life.  The
State argues that the inclusion of the definition of Aintentionally@
as it relates to conduct did nothing but increase its burden.  However, that
argument has been expressly disapproved as an attempt to change the offense of
murder under Section 19.02(b)(2) from a result-oriented offense to both a
result and a conduct offense.  Lugo-Lugo, 650 S.W.2d at 81-82.

Because
this case involves a result-oriented offense, murder as defined in
Section 19.02(b)(2), and because it is error to include a definition of Aintentionally@ as it relates to conduct
in a result-oriented offense, the jury charge contained error.  However, an
erroneous jury charge does not result in automatic reversal.  Abdnor v.
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  We now perform a harm
analysis.








There
is a two-step review in analyzing jury charge error.  First, we determine
whether error actually occurred.  Next, we must determine whether sufficient
harm resulted as a result of the error. See Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Abdnor,
871 S.W.2d at 731-32.  Where a timely objection has been made at trial, as was
done here, all that an appellant must show is that there was some harm.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  The harm must be
actual rather than theoretical.  Arline v. State, 721 S.W.2d 348, 351
(Tex. Crim. App. 1986).  In Almanza, the court stated that we must
assess the harm Ain
light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a whole.@  Almanza, 686
S.W.2d at 171.

In
reviewing for harm resulting from the inclusion of improper conduct elements in
the definitions portion of the jury charge, we may consider the extent to which
the application paragraphs of the charge limit culpable mental states.  Cook,
884 S.W.2d at 492 n.6.

In
the case now before us, the trial court properly limited the culpable mental
state to the results of Albarado=s
conduct.  Furthermore, the evidence showed that Albarado had a loaded,
pistol-gripped shotgun and that, although he fired the first shot in the air,
he kept moving toward the opposition and continually fired a deadly weapon in
their direction as they were running away.

The
evidence also shows that on May 29, 2005, Albarado escaped from the Taylor
County Juvenile Justice Center where he was being held after law enforcement
officers arrested him for this offense.  He was later found in San Diego,
California, and returned to custody on June 24, 2005.  Although Albarado
testified that he did not intend for anyone to die, he did admit that he was
the shooter.  Also, he was positively identified as the one who was moving
toward the fleeing crowd while shooting the shotgun in their direction. 
Finally, it was one of the 00 buckshot pellets that caused the victim=s death.

Reviewing
the record as a whole, we determine that there was no harm caused by the error
in the definitions portion of the trial court=s
charge.  Albarado=s
first point of error is overruled.

In
his second point, Albarado complains that the trial court committed error when
it rejected his requested issue on self-defense.








Former
Tex. Penal Code ' 9.31 (1995) was in effect
at the time of this offense and at the time of trial.  (See now Tex. Penal Code Ann. ' 9.31 (Vernon 2008)).  That
section dealt with the issue of self-defense.  Under the former version of
Section 9.31, a person was entitled to an instruction regarding self-defense if
there was some evidence that he intended to use force against another person,
that he did use force, and that he used force only because he reasonably
believed that the use of such force was immediately necessary to prevent the
use or attempted use of unlawful force against him.  Tex. Penal Code Ann. '
9.32 (Vernon Supp. 2008) addresses the issue of deadly force.  The use of deadly
force is justified if the use of force would be justified under
Section 9.31 and when and to the degree that the one exercising deadly
force had a reasonable belief that the deadly force was immediately necessary
to protect him against the other=s
use or attempted use of deadly force.

Under
the former version, Tex. Penal Code
' 9.32(a)(2) (1995), a
person was justified in using deadly force against another if a reasonable
person in his situation would not have retreated.  In other words, if it would
have been reasonable to retreat, the use of deadly force was not justified
under the former version of Section 9.32(a)(2).  (The matter of retreat is now
covered in Sections 9.31 and 9.32(c) and (d)).

            One
who claims self-defense has the burden of producing some evidence to support
that claim.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App.
2003).  If the issue of self-defense is not raised by the evidence, the trial
court is not required to instruct on it.  Ex parte Nailor, 149 S.W.3d
125, 132 (Tex. Crim. App. 2004).  In order to determine whether one is entitled
to an instruction on the issue, we view the evidence in the light most
favorable to the defendant.  Id.

There
was testimony that someone in the group fighting Albarado and his friends said,
AGo get the gun.@  There is no evidence that
anyone ever saw another gun.  The evidence shows that, after Albarado fired a
shot into the air, the victim and the others with him were running away from
Albarado.  Nevertheless, Albarado continued to fire the shotgun as he moved
toward the fleeing group.  At the time that Albarado shot the victim in the
back, a person would not have believed, reasonably, that deadly force was
immediately necessary to protect himself against the use or attempted use of
deadly force.  Furthermore, in this situation, applying former Section
9.32(a)(2),  we cannot say that a reasonable person would not have retreated.

When
viewed in the light most favorable to Albarado, the most that can be said is
that he attacked elements of the offense that the State was required to prove,
rather than offering a legal justification.  He neither argued nor presented
evidence that he committed the offense but that he was justified in committing
it; he simply said that he did not intend for anyone to die.  See Ex parte
Nailor, 149 S.W.3d at 132-34; Young v. State, 991 S.W.2d 835, 839
(Tex. Crim. App. 1999).  Albarado was not entitled to an instruction on the law
of self-defense, and the trial court did not err in refusing the instruction. 
Albarado=s second
point is overruled.








In
Albarado=s third point
of error, he claims that his lawyer afforded him ineffective assistance of
counsel when counsel did not request a jury charge on the issue of sudden passion. 
If a defendant is convicted of murder, he may argue that he caused the death
while under the immediate influence of sudden passion arising from an adequate
cause, as Albarado did in this case.  Tex.
Penal Code Ann. '
19.02(d) (Vernon 2003).  If the defendant establishes sudden passion and
adequate cause by a preponderance of the evidence, the offense level is reduced
from first degree to second degree, and the ensuing punishment range is
reduced.  Id.

To
prevail on a claim of ineffective assistance of counsel, an appellant must
establish that his lawyer=s
performance fell below an objective standard of reasonableness and that there
is a Areasonable
probability@ the
result of the proceeding would have been different but for counsel=s deficient performance.  Strickland
v. Washington, 466 U.S. 668, 693-94 (1984); Mallett v. State, 65
S.W.3d 59, 62-63 (Tex. Crim. App. 2001).  A reasonable probability is a
probability sufficient to undermine confidence in the outcome of the trial.  Hernandez
v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  The purpose of this
two-pronged test is to judge whether counsel=s
conduct so compromised the proper functioning of the adversarial process that
the trial cannot be said to have produced a reliable result.  Thompson v.
State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The
review of defense counsel=s
representation is highly deferential and presumes that counsel=s actions fell within a
wide range of reasonable professional assistance.  Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Appellant must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.  Jackson v. State, 877 S.W.2d 768 (Tex.
Crim. App. 1994); Hayden v. State, 155 S.W.3d 640, 648 (Tex. App.C  Eastland 2005, pet. ref=d).  When the record is
silent on the motivations underlying counsel=s
tactical decisions, an appellant usually cannot overcome the strong presumption
that counsel=s conduct
was reasonable.  Thompson, 9 S.W.3d at 813.  In order to defeat Strickland=s presumption of reasonable
professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. at 814
(quoting McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996)).  We do not inquire into trial strategy unless no plausible basis exists
for trial counsel=s
actions.  Johnson v. State, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981). 
When the record contains no evidence of the reasoning behind trial counsel=s actions, we cannot
conclude that counsel=s
performance was deficient.  Jackson, 877 S.W.2d at 771.

If
Albarado was not entitled to a punishment phase instruction on sudden passion,
then trial counsel was not ineffective in not requesting it.








As
with the matter of self-defense discussed above, under the controlling standard
of review, we must view the evidence in the light most favorable to Albarado to
determine whether there is some evidence that an adequate provocation existed
for his conduct, that is, that a passion or an emotion such as fear, terror,
anger, rage, or resentment existed; that the homicide occurred while the
passion still existed and before there was reasonable opportunity for the
passion to cool; and that there was a causal connection between the
provocation, the passion, and the homicide.  See Tex. Penal Code Ann. '
19.02(a)(1), (a)(2), (d) (Vernon 2003); McKinney, 179 S.W.3d 565, 569
(Tex. Crim. App. 2005).  A charge on sudden passion arising from fear is not
required unless the actor=s
fear reaches that point where he would be incapable of rational and collected
thought.  Kennedy v. State, 193 S.W.3d 645, 654 (Tex. App.CFort Worth 2006, pet. ref=d).  Ordinary anger or
causes of a defendant=s
own making are not legally adequate causes.  Naasz v. State, 974 S.W.2d
418, 423 (Tex. App.CDallas
1998, pet. ref=d).

Even
when we view this record in the light most favorable to Albarado, as we are
required to do, there is no evidence to raise the issue of sudden passion. 
Albarado chose to enter a fight with the victim=s
group.  Further, it appears that he had the presence of mind to fire the
shotgun into the air, as he says, to frighten the members of the opposing group
away.  It also appears that he methodically advanced toward the other group,
firing his shotgun.  This record does not raise the issue that anyone acted in
a manner that would produce an emotion sufficient to render the mind of a
person of ordinary temper incapable of cool reflection.  See Section
19.02(a)(1), (a)(2), (d);  McKinney, 179 S.W.3d at 569; Kennedy,
193 S.W.3d at 653‑54.   Because the issue of sudden passion was not
raised, Albarado was not entitled to have an instruction regarding it presented
to the jury; his trial counsel was not ineffective for failing to ask for the
instruction.  We overrule the third point.

In
his fourth point, Albarado claims that the State withheld evidence from him in
violation of Brady v. Maryland, 373 U.S. 83 (1963).   Before one may
succeed in showing a Brady violation, the accused must show that (1) the
evidence is favorable to the accused because it is exculpatory or impeaching,
(2) the State suppressed evidence either inadvertently or willfully, and (3)
the suppression of the evidence resulted in prejudice (i.e., that it was
material).  Evidence is material only if there is a reasonable probability
that, had the evidence been disclosed to the defense, the result of the
proceeding would have been different.  A reasonable probability is one that is
sufficient to undermine confidence in the outcome of the case.  Ex parte
Reed, 271 S.W.3d 698, 726-27 (Tex. Crim. App. 2008).








The
evidence that Albarado claims was withheld from him comes from two sources. 
First,  Zepeda made a phone call while she was in custody.  In that
conversation, Zepeda made the statement that someone in the rival group had
yelled for Asomeone to
get their gun.@  The
State admits that Zepeda said, in that phone conversation, that AScoony=s [from the rival group]
group shot at us.@ 
The State argues, however, that Albarado knew about the phone call and about
its contents.  The State had supplied the first information to them in writing
in response to a motion filed by Albarado.  It is apparent from questioning by
Albarado=s trial
counsel that he knew about the contents of this conversation at Albarado=s earlier juvenile
certification hearing.  There can be no Brady violation when the
information claimed to be withheld by the State is known to the defendant.  State
v. DeLeon, 971 S.W.2d 701, 706 (Tex. App.CAmarillo
1998, pet. ref=d).

Albarado
also alleges that the State withheld evidence regarding gang activity collected
under Tex. Code Crim. Proc. Ann.
ch. 61 (Vernon 2006 & Supp. 2008).  That chapter provides a procedure
whereby criminal justice agencies may gather information and place it into a
database for the purpose of handling street gang activity.  This procedure is
not mandatory, and the Abilene Police Department did not keep such records. 
The State=s
unchallenged position, then, is that the evidence requested by Albarado did not
exist.  The State is not required to disclose information that it does not have
and that is not known to exist.  Harm v. State, 183 S.W.3d 403, 407
(Tex. Crim. App. 2006).

Furthermore,
Albarado had the burden to show that, in light of all of the evidence, it was
reasonably probable that the outcome of the case would have been different had
the State disclosed the information.  Hampton v. State, 86 S.W.3d 603,
612 (Tex. Crim. App. 2002).  In this regard, Albarado simply states conclusions
that there would have been Aa
different defense strategy@
that Awould
necessarily have resulted in an acquittal.@ 
The first conclusion is made only in relation to Aprior
drive by shootings@
and Athe demise of a
potential witness.@ 
Albarado has not complained that there was any evidence in existence that was
withheld in connection with those two items.








Albarado
has not met his burden to show that Brady materials were withheld.  He
had the information.  Even if he had shown that Brady materials had been
withheld, he has not shown how the outcome of this case would have been
different if the State had disclosed the materials.  His fourth point is
overruled.[3]

Albarado
maintains in his fifth point that the trial court erred when it admitted evidence
that he had escaped while in custody for this offense.  We disagree.  With few
exceptions,  none of which are applicable here, an inference of guilt may be
drawn from evidence of escape, and such evidence is admissible for that
purpose.  Foster v. State, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989).

Although
not mentioned in his stated point of error, Albarado also makes the argument
that the trial court erred when it admitted evidence of gang affiliation.  He
claims that it was Aimproper
character evidence.@ 
The State points out that Albarado did not object to this evidence when offered
and that he has waived any complaint about the admission of the evidence.  We
agree.  In order to preserve an error in the admission of evidence for
appellate review, a defendant must make a timely objection.  See Tex. R. App. P. 33.1(a)(1); Tell v.
State, 908 S.W.2d 535, 544 (Tex. App.CFort Worth
1995, no pet.).  Albarado has waived the complaint.  Albarado=s fifth point is overruled.

Albarado
asserts in his sixth point Athat
there was insufficient evidence to sustain a conviction for murder under
[Section] 19.02(b)(2) as charged to the jury.@ 
Albarado discusses diverse  matters under this point.








First,
he complains again about the punishment phase testimony related to gang
activity and gang tattoos offered through Deputy Sheriff Brad Birchum.  Deputy
Birchum is in the narcotics division at the sheriff=s office, and he also works with the FBI on a
Safe Streets Gang Task Force in Abilene.  Albarado did not object to this
testimony, and he has waived any complaint in connection with its admission
into evidence.  See Rule 33.1(a)(1).  Albarado also testified about his
tattoo.  Furthermore, evidence of gang tattoos is admissible.  At the
punishment phase of a criminal trial, evidence may be presented as to any
matter that the court deems relevant to sentencing, including evidence of the
defendant=s background
or character.  Tex. Code Crim. Proc. Ann.
art. 37.07, '
3(a)(1) (Vernon Supp. 2008); Tex. R.
Evid. 401.  A defendant=s
choice of tattoos can reflect his character.  Likewise, his choice of tattoos
can demonstrate a motive for his crime.  Conner v. State, 67 S.W.3d
192, 201 (Tex. Crim. App. 2001).  The testimony was brief:  Albarado=s testimony regarding the
tattoo was less than six pages, and Deputy Birchum=s testimony was five pages.  A review of this
record reveals that the probative value of the evidence was not outweighed by
the danger of unfair prejudice.  See Tex.
R. Evid. 403.

Next,
under his sixth point, Albarado again complains about the testimony regarding
his escape.  We have already held under another point that this evidence was
admissible.  See Foster, 779 S.W.2d at 859.  Albarado devotes a
good deal of space in this point to a discussion of making a harm analysis. 
However, we have found no error in the admission of the evidence, and we need
not perform a harm analysis.

Under
this same point, Albarado makes the argument that the evidence is legally and
factually insufficient to support the verdict.

In
a legal sufficiency review, we view all the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307 (1979); Prible v. State, 175 S.W.3d 724,
730-31 (Tex. Crim. App. 2005).

In
a factual sufficiency review, we consider all the evidence in a neutral light. 
Prible, 175 S.W.3d at 730-31.  The evidence may be factually
insufficient if, when considered by itself, the evidence supporting the verdict
is so weak that the verdict is clearly wrong and manifestly unjust.  Id.
at 731.  The evidence also may be factually insufficient where the evidence
both supports and contradicts the verdict B
the contrary evidence may be strong enough the beyond-a-reasonable-doubt
standard could not have been met. Id. In conducting a factual
sufficiency review, we give deference to the factfinder so that we do not
substitute our own judgment.  Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996).  We must consider the evidence that Albarado claims is most
important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  It
is within the province of the factfinder to resolve any conflicts and
inconsistencies in the evidence. Heiselbetz v. State, 906 S.W.2d 500,
504 (Tex. Crim. App. 1995).  And, the factfinder is free to believe or
disbelieve any part or all of a witness=s
testimony.  Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998).








In
this case, the State was required to prove that Albarado intended to cause
serious bodily injury to the victim, that he committed an act clearly dangerous
to human life, and that he thereby caused the victim=s death.  The evidence shows that, after a
night of smoking marihuana, taking illegal drugs, and drinking alcohol,
Albarado was involved in a fight.  Prior to the fight, he had obtained a
pistol-gripped shotgun and had loaded it with 00 buckshot.  During the fight,
Albarado got the shotgun; fired a warning shot into the air; and, as neighbor
William Barlow testified, headed toward the victim and others as they were
trying to run away.  Albarado also testified that, as he went after the victim
and the others, he was firing the shotgun B
from the hip B in
their direction and that he shot the victim in the back.

 It
is undisputed that Albarado shot the victim with a shotgun.  It is also
undisputed that the victim died from the gunshot wounds.  A rational juror could
determine that shooting a shotgun in the direction of persons who are
attempting to get away is an act clearly dangerous to human life.  The
factfinder may infer intent to cause serious bodily injury from any facts in
evidence that, in its mind, prove the existence of such intent, as the use of a
deadly weapon.  See Walker v. State, 440 S.W.2d 653, 657 (Tex. Crim.
App. 1969).  A Afirearm@ is a deadly weapon per
se.  Trevino v. State, 228 S.W.3d 729, 758 (Tex. App.CCorpus Christi 2006, pet.
ref=d).  When the
weapon used in effecting an unlawful killing is a deadly weapon per se, the
intent to kill is presumed.  Walker, 440 S.W.2d at 657.  The jury may
also infer an intent to cause serious bodily injury from the acts or words of
the accused, the manner in which the offense was committed, and the nature of
the wounds inflicted.  Payne v. State, 194 S.W.3d 689, 694 (Tex. App.CHouston [14th Dist.] 2006,
pet. ref=d).  Under
the well-known standards that we have outlined, we hold that the evidence is
both legally and factually sufficient to support the verdict in this case. 
Albarado=s sixth point
is overruled.

We
affirm the judgment of the trial court.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

July 16, 2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]On December 19, 2005, the Juvenile Court of Taylor
County granted the AState=s Petition for
Waiver of Jurisdiction and Discretionary Transfer from Juvenile Court to a
Criminal Court.@  This case was then tried in the 104th District Court
of Taylor County.





[2]The offense in Lugo-Lugo is the same as involved
in this case, but the offense now appears in Section 19.02(b)(2) rather than in
former Tex. Penal Code ' 19.02(a)(2) (1973).





[3]Albarado has asserted claims within his argument on
this point of error that certain evidence was not admissible and that the
police investigation was not full and complete, as well as other assertions not
germane to the point.  We do not address those miscellaneous assertions.  See
Tex. R. App. P. 33.1.